E. T. BRODNAX and others *v.* ZACHARIAH GROOM and others, Comm'rs. &c.

The act of 1868–'69, c. 102, "To authorize the Commissioners of Rockingham County to levy a special tax" &c., is constitutional.

By comparing the Act of 1864–'65, c. 32, with that of 1868–69, c. 74, s. 20, as well as from the principle involved therein,—injunctions to restrain the collection of taxes, will be allowed only where a question of the existence of Constitutional power is involved, and not where the question is as regards matters only of detail, *ex. gr.* the *valuation* of property, the sufficiency of a Sheriff's bond, &c.

Whether a law authorizing the Commissioners of a particular County to levy taxes for the purpose of building bridges, is a Private or a Public-local law, *quaere?*

If a Private act be certified by the presiding officers of the two branches of the Legislature as duly *ratified*, it is not competent for the judiciary to go behind such *record*, and enquire collaterally (*ex. gr.*) whether the thirty days notice of an application therefor, required by the Constitution, have been given.

An act giving the *special approval* of the Legislature to county taxation for *special purposes* (Const. Art. V, Sect. 7,) need not specify the sum to be raised by such taxation, nor a limit beyond which it cannot be carried ; *details* are not proper in such statutes,— these should be left to the Commissioners.

It is doubtful whether it be practicable for the Courts to give effect to regulations imposed by Constitutions upon the *exercise* of the tax-power: Whether the *power* to tax do or do not exist, is a proper subject of judicial enquiry : Whether the exercise of a conceded power in any particular case were proper, is to be left to the constituents of the body which imposed the tax ?

Where an injunction was sought against levying a tax, on the alleged ground that it was to be applied to build a particular bridge which

was to be constructed at an inconvenient place, was connected with no public road, was upon a plan too costly, and was therefore, unconstitutional : *Held*, that, as the general head of repairing and building bridges came under "the necessary expenses" of the county, it was not competent for the Court to review a decision of the County Commissioners, as to what particular bridge, as regards either location or description, is, or is not necessary.

{*Worth* v. *Commissioners of Fayetteville*, Win. Eq. 70, cited and approved.)

INJUNCTION, before *Tourgee, J.,* November 27th 1869, at Chambers, ROCKINGHAM Court.

An order of restraint had been made in the action by *Watts, J.,* October 5th 1869, and the matter came before Judge Tourgee, upon a motion to vacate, made after due notice &c.

The plaintiffs were tax payers, who sued for themselves and all other tax payers of the county of.Rockingham, and the defendants were the commissioners of that county.

The complaint sought an injunction against a tax alleged to have been levied by the defendants under an Act (1868–'69, c. 102, ratified April 1st 1869,) which provided, " That the commissioners of the county of Rockingham be and they are hereby authorized to levy and collect a special tax for the purpose of building and repairing bridges in said county.'

The objections were as follows :

1. That the said Act was *Private*, and was passed without the *thirty* days notice of application required by the Constitution, Art. 2, Sec. 4.

2. That the Act did not specify the amount to be collected, or the particular bridges to be built.

3. That the tax had not been approved by a majority of the voters in the county, as required by the Constitution, Art. 7, Sec. 7.

4. That the Revenue Act of March 13 1869, required the Assessors to value the property of the tax payers, and provided that such valuations were to be revised by the com-

missioners, but that, in violation thereof, the commissioners had made new valuations, by taking the valuations of 1860, and, *in every case*, subtracting 25 per cent. from them.

5. That of the $12,000 levied, the commissioners had appropriated $10,000 to build a bridge, where none had ever been before, connected with no public road, and otherwise unnecessary, inconvenient and extravagantly expensive.

6. That the Sheriff who was to collect the tax, was insolvent, and that the bond he had given had no condition covering the collection of this tax.

Upon the application before Judge Tourgee the defendants filed an affidavit in reply to the above objections, in which they denied the truth of the allegations numbered above 4 and 5, and stated that the mistake in regard to the Sheriff's bond referred to in 6, had been corrected before the serving of the injunction in this case; &c.

The Judge, after consideration, vacated the order theretofore made; and the plaintiffs appealed.

*Battle & Sons, Graham and Bragg* for the appellants.
*Phillips & Merrimon, contra.*

Pearson, C. J. This is a proceeding by the plaintiffs, who are tax-payers, in behalf of themselves, and of the other tax-payers of the County of Rockingham, to call in question the validity of an Act of the General Assembly, which authorizes the County Commissioners so levy. a tax for "repairing and building bridges."

His Honor, in the court below, discharged the order of restraint, and the case is before us, by appeal from that ruling.

In *Worth* v. *Comm'rs of Fayetteville,* Win. Eq. 70, while entertaining a bill in the name of a few, for all, of the taxpayers, to enjoin the collection of the taxes of a municipal corporation, the court felt it to be a duty to intimate a doubt as to whether bills of this kind could be allowed in respect

to State and county taxes, because of the public mischief that might ensue by suspending the means of support upon which the governments of the State and of the county depend for existence.

Therefore, an act of the Legislature was passed, by which the " writ of injunction is allowed in all cases against the collection of taxes illegally imposed or assessed " Acts 1864-5, ch. 32.

Special legislation is objected to by many; but at all events, in construing the statute, the courts are to take into consideration the supposed mischief which the act was intended to remedy, and to construe it in reference to the mischief.

Upon this rule of construction, we think the act includes only cases which involve the constitutional power to impose the tax, or to authorize it to be done, and that the remedy by injunction against the collection of State and county taxes, does not embrace questions as to the mode of valuing property, the sufficiency of the Sheriff's bond, and the like, which may be called "matters of detail."

In this conclusion we are confirmed by the Act, 1868-9, ch. 74, sec. 20: "If any person shall complain before the Commissioners that his property has been improperly valued, or that he is charged with an excessive tax, he shall, &c., and may appeal to the Superior Court."

This is a legislative construction of the Act, 1864-5, or it has the effect of repealing that act, so far as the words might seem to extend beyond furnishing a mode of testing the power, under the Constitution, to impose a tax, or to authorize it to be imposed.

We do not think it necessary to enter into the question; whether this is a *public local* act, or a mere *private* act, in regard to which thirty days notice of the application must be given; for taking it to be a mere private act, we are of opinion, that the ratification certified by the Lieutenant Governor, and the Speaker of the House of Representatives, makes it a "matter of record," which cannot be impeached before

the courts in a collateral way. Lord Coke says, "a record, until reversed, importeth verity."

There can be no doubt that acts of the Legislature, like judgments of Courts, are matters of record, and the idea that the "verity of the record" can be averred against in a collateral proceeding, is opposed to all of the authorities. The courts must act on the maxim, "*Omnia presumuntur,*" &c. Suppose an act of Congress is returned by the President, with his objections, and the Vice-President and the Speaker of the House certify that it passed afterwards by the constitutional majority; is it open for the courts to go behind the record, and hear proof to the contrary?

1. "The taxes laid by the Commissioners, &c., shall never exceed the double of the State tax, except for a special purpose, and with the special approval of the General Assembly." Art. 5, sec. 7.

It is conceded that the tax, in our case, did exceed the double of the State tax, but it is averred, it was for a special purpose, and had the special approval of the Legislature; and reference is made to the Act ratified 1st day of April 1869, entitled "An Act to authorize the Commissioners of Rockingham County to levy a special tax for the purpose of building and repairing bridges, in said county."

There is a *special purpose,* to-wit: building and repairing bridges in the County of Rockingham, and it has the special approval of the General Assembly. True, it does not set out what amount will be required to repair the old bridges, or to build new ones.

We do not consider it necessary, that the act should set out the *precise sum,* in order to meet the words, "for a special purpose," it is easy enough to say "the extra tax is required for building and repairing bridges." The statute must not go into details and estimates,—what bridges need repair, or in what cases new ones are to be built, and if so, whether it is to be on a cheap plan, or one that will cost more, and last longer. It belongs to the county authorities to settle matters of this kind.

The truth is, when the *power* of taxation is conferred, it is difficult, if not impossible, for the courts to enforce restraints, which the constitution vainly attempts to impose upon its *exercise.*

Can this court say, to a co-ordinate branch of the Government, "your Act, either from ignorance or design, is not framed with a sufficient degree of precision, and therefore we declare it void?"

The reply would be, "The General Assembly has the *power,* and its *evasion* or *abuse* is *not a matter for the courts,* but for our constituents."

2. Art 7, sec. 7: "No county, city, &c., shall contract any debts, pledge its faith, or lend its credit, nor shall any tax be levied or collected by any officers of the same, *except for the necessary expenses thereof,* unless by a vote of a majority of the qualified voters therein."

In regard to contracting debts, pledging its faith, or lending its credit, there is an absolute prohibition, and this section is *cumulative,* and adds another restraint to that of Sec. 7, art. 5, which we have been considering. When the prohibition is absolute, so as to take away the power, the Courts can handle the subject.

But the power to tax is assumed, and an attempt is made to restrain its exercise, "except for the necessary expenses of the county." Who is to decide what are the necessary expenses of a county? The county commissioners; to whom are confided the trust of regulating all county matters. "Repairing and building bridges" is a part of the necessary expenses of a county, as much so as keeping the roads in order, or making new roads; so the case before us is within the *power* of the county commissioners. How can this court undertake to control its *exercise?* Can we say, such a bridge does not need repairs; or that in building a new bridge near the site of an old bridge, it should be erected as heretofore, *upon posts,* so as to be cheap, but warranted to last for some years; or that it is better policy to locate it a

mile or so above, where the banks are good abutments, and to have *stone pillars*, at a heavier outlay at the start, but such as will ensure permanence, and be cheaper in the long run ?

In short, this court is not capable of controlling *the exercise* of power on the part of the General Assembly, or of the county authorities, and it cannot assume to do so, without putting itself in antagonism as well to the General Assembly, as to the county authorities, and *erecting a despotism of five men;* which is opposed to the fundamental principles of our government, and the usages of all times past.

For the exercise of powers conferred by the constitution, the people must rely upon the honesty of the members of the General Assembly, and of the persons elected to fill places of trust in the several counties.

This court has no power, and is not capable if it had the power, of controlling the exercise of power conferred by the constitution, upon the legislative department of the government, or upon the county authorities.

We see no error. Order in the court below affirmed.

PER CURIAM.　　　　　　　　　　Judgment affirmed.