No. 5470.

CHOPPIN & BEARD VS. LOUISIANA LEVEE COMPANY.

Under the acts of the Legislature which set forth the terms of the contract made by the State with the Louisiana Levee Company, the company are bound to construct, or repair, or strengthen in any given year only such levees, as the commission of engineers, created by those acts, shall require, and furnish estimates of the work of, before the first of October of the preceding year; and to maintain every *completed* section of the levee, up to the standard dimensions prescribed by the commission of engineers. One who claims damages of the company therefore, for injury caused by a crevasse at any given point on the levee, must, in order to set forth a *prima facie* cause of action, allege that the company failed to build, or repair the levee at the crevasse point after having been directed by the engineers to do it, or, had not done the work according to the standard fixed by the engineers; or, that the crevasse had occurred at some point on a completed section of the levee, where the standard dimensions prescribed by the engineers had not been maintained by the company; or, that on account of the imperfection of the work, the crevasse occurred when the water was below the standard height fixed by the engineers.

Whether the journals of the Houses of the Legislature are admissible in evidence to prove that a certain act was passed in disregard of the constitutional forms necessary to give it validity as a law, is an open question before this court.

APPEAL from the Superior District Court, parish of Orleans. *Hawkins*, J.

*James H. Grover* and *T. J. Semmes* for plaintiffs and appellants.

*T. Gilmore & Sons* and *John A. Campbell* for defendants.

The opinion of the court was delivered by

MANNING, C. J. The plaintiffs, owners of a plantation in Iberville parish, allege that it was seriously injured by an inundation in April 1874, by three crevasses in the levees on the Mississippi river at Morganza, Point Manoir, and Hickey, and they claim indemnity from the defendant for the loss sustained in that and the following years. The damages are laid at forty-three thousand seven hundred dollars.

The defendant excepted to the action for this;—that for none of the matters and things alleged in the petition is the defendant liable, or indebted in law to the plaintiffs, there being no privity of contract between them, and that the petition discloses no cause of action.

The plaintiffs then filed a supplemental and amended petition. The exception was sustained, and the suit dismissed.

The controversy turns upon the nature and extent of the contract of the defendant under the Acts of the Legislature specially relating to the company, and the sufficiency of the allegations of the petition to constitute a *prima facie* cause of action for breach of that contract. It becomes necessary therefore to analyze the Acts with some minuteness of detail, and to scrutinize the allegations of the petition, in order to discover whether the plaintiffs have made the necessary averments to

entitle them to be heard when complaining of the defendant's non-performance of obligations, charged to have been assumed under the Acts of the General Assembly.

The Louisiana Levee Company organized as a corporation under the general laws of the State by a notarial act in February 1871. Shortly thereafter, on the twentieth of that month, the Legislature passed an act, recognizing that incorporation, and contracted with the Company as follows;

That in order to maintain a uniform and perfect system, the location and dimensions of all levees to be constructed, maintained, repaired, and kept in repair and managed, shall be determined by a commission of three engineers, whose duty shall be, and who are expressly directed to determine the proper location and dimensions of all levees to be constructed, repaired, or strengthened by the company, and the standard of dimensions to which they shall be maintained by it, and to report the same with maps and profiles thereof, and the number of cubic yards to be built in the construction of new levees, and in strengthening, enlarging, and repairing the levees now in existence, which report shall be of sections of levees of five miles or more. In consideration of the compensation, benefits, rights and powers, conferred by the Act, the Company shall take charge of, manage, control, construct, maintain, repair, and keep in repair all the levees in this State, and certain others, and for the purpose of enabling the Company to fulfill its duty in this regard, it is vested with the sole and exclusive custody, management, and control of all the levees in this State for twenty-one years, and its engineers and surveyors, contractors, agents, and servants are empowered to enter upon and occupy all lands that may be necessary, and to remain as long as may be necessary to do and perform every thing required of the company by the Act, investing it with all the powers and prerogatives in respect to the levees as was until then vested in the State, parish, or municipal authorities, except that the company could not assess or collect any tax, nor compel the owner of land to build or repair any levees. The company is obliged to commence the construction of levees within sixty days from the receipt of the report of the commission of engineers, and must thereafter construct not less than three millions of cubic yards every year until the levee is completed according to the standard required by that report, and after the completion of any section of a levee, the company must maintain it up to the standard dimensions specified in the report, and in the event of its failing to do so, it shall be liable in damages to any person injured by reason of such neglect or failure, unless the injury is caused by acts of violence of men, the wrongful acts of individuals, the existence of obstacles interposed by the action of courts, or the operation of causes over which the com-

pany can have, no control, or on account of the floods rising above the standard height determined by the commission of engineers. In subsequent sections the act provides that the Governor shall cause an estimate to be made of the cost of constructing or completing the levees according to the standard required by the engineers' report, within thirty days after the receipt of that report, and to transmit the estimate to the Auditor, who shall thereupon apportion the estimated cost among the several parishes according to the assessment rolls of the State, and shall annually thereafter cause to be collected the taxes necessary to pay this estimate in certain proportions specified in the act. Acts 1871, p. 29 *et seq.*

A contract was formally made by the Governor, and the Company under this Act, and was ratified by the legislature on the 28th. of same month. *Ibid.*, p. 64.

On March 6, 1873, an act amendatory of these two of 1871 was passed, re-enacting the main features of those acts which we have epitomised above, but changing the requirement of the construction of a specified number of cubic yards of levee each year into one for the construction of not less than the number of cubic yards in each year required by the estimate of the engineers, and reducing the rate of compensation from sixty to fifty cents per cubic yard, and requiring the engineers to report before October 1st. of each year a detailed statement of the number and size and location of the levees to be constructed during the next ensuing year. The enactment is then made in specific terms, that the company shall not be required to build during the year any levees except those required to be built by said commission, unless there is a destruction or threatened destruction of any levees from the caving of banks after the commission have made their report. Acts 1873, p. 83.

On March 9, 1874 there was another Act which provided that if the Company, within twelve months after the promulgation of the Funding Act, should file in the office of the Secretary of State an acceptance of the reduction of the tax of four mills for the repair and construction of levees to three mills, then that section of the Act of February 20, 1871 which made the company liable for damages for its failure to maintain the levees up to the standard dimensions required by the engineers' report, was repealed.

Under this legislation, and the contract made by the Levee Company, the plaintiffs sue. They allege that the Company undertook and contracted to construct, maintain, repair, and keep in repair all the levees in this State, and to protect any of the lands of this State from overflow by the waters of the Mississippi river, and bound itself to construct not less than three millions of cubic yards of levees each year until the entire line of levees of the State reached a standard which

would effect the purposes of the company's organization, which was to secure the alluvial lands within the State from overflow. They allege that the company has reaped the benefits of this contract with the State in receiving bonds of the State amounting to a million of dollars, but has failed to fulfill its obligations—that it has not protected the alluvial lands of the State, and especially it has not protected the plaintiffs' land, from overflow—it has not built the required number of cubic yards of levees each year, nor repaired them—that it was bound by its contract to protect the plaintiffs' plantation from overflow, and has not done it, and in consequence of this failure to protect it, it has been inundated by the water through three crevasses—that the company had knowledge, or ought to have had knowledge that the levees were not sufficiently strong to resist the pressure of the water which would come against them—that its officers knew or ought to have known the levees were in a dangerous condition and needed repairs, but the company failed to make these repairs, and while giving its means and energies to close other crevasses, made no effort to close either of these three through which the water flowed over the plaintiffs' plantation, occasioning destruction of the growing crops, the buildings, etc., and causing damage to the amount before stated.

The petition was filed May 1. 1874. The exception was made on the 8th. and a supplemental petition filed on the 18th. of same month. In it, the plaintiffs reiterate their allegations that under the act of 1871, the defendant was liable in damages to any person who was injured by its failure to comply with the obligations assumed in its contract with the State, and that by reason of its neglect to construct, repair, and keep in repair the levees mentioned in the original petition according to the standard to be fixed in accordance with that Act, these levees gave way, and the plaintiffs were damaged thereby—that the overflow and consequent injury was caused by the defendant's neglect to comply with the requirements of its contract, and that the plaintiffs suffered injury within the intent and meaning of that Act. They then allege that the Act of March 9, 1874, which assumed to relieve the Company from liability for damage, is unconstitutional, because it is in conflict with the constitutions of the United States, and of this State, in this, that it destroys a vested right of the plaintiffs, and impairs the obligation of a contract, by virtue of which the defendant was liable in damages to them.

It will be observed that the Acts of the Legislature set out the contract, its object, and the mode of its execution, with industrious particularity. The object was to maintain a uniform and perfect system of levees throughout the State. The means adopted to attain it was to entrust to a commission of engineers the right and the power to deter-

mine both the location and the dimensions of all levees, whether old and needing repair, or new and requiring construction. And this delegation of power is exclusive. No one else, and no other body, had the right to demand or require the construction of a new levee, or the repair and strengthening of an old levee, but the commission of engineers, who are entrusted with plenary power in every thing that relates to the location and dimensions of the levees, nor was the Auditor required to levy or cause to be collected by taxation any sum for the payment of the company, except such sum as was sufficient to cover the cost of the levees which the commission of engineers had located and estimated. And the obligation of the Company is likewise single, and exclusive of every source but one—it could not be required to build during a year any levees but those which had been located by the engineers before October 1st. of the previous year, except in one emergency.

These Acts, instead of conferring the absolute power upon the Company to build whatever levees they pleased, or imposing upon it the obligation to build all needed levees, restricts and hampers it by commanding that it shall not build any levees until the commission of engineers have fixed their location, prescribed their dimensions, and reported estimates of the work before a given day in each year. The acts are so deftly draughted that 'the commission of engineers is the governing power, without whose fiat nothing can be done, but who are themselves required to do all things before a specified day in order to impose an obligation upon the Company to do any thing. And if they or either of them shall fail to do his duty in locating levees, or fixing their dimensions, or making the estimates, there appears no provision in these statutes for his displacement, or compulsion. One of them is appointed by the Governor another by the Directors of the company, and the third by the President, but when appointed, they are not the Company's officers, and are not more amenable to it than to any citizen, and while the company is invested with all the powers and prerogatives with respect to. the location, construction, and control of levees that either the State, or the parishes, or the municipal authorities had and exercised until these acts were passed, it is subject to the direction of the engineers in locating and building and repairing the levees.

The company could only construct as directed by the engineers, but when any section of a levee was completed, or when the whole system of levees was perfected, then the Company must maintain it up to the standard dimensions specified in the report of the engineers, and if it failed to do so, liability in damages resulted.

This being the contract between the State and the Levee Company, we have now to inquire whether the allegations of the petition disclose a cause of action for its breach.

There is not among these allegations, one that the commission of engineers at any time located a levee at either of the three points where crevasses occurred, or directed the construction of one there, or prescribed its dimensions, or that a levee having been located and constructed there, it did not conform to the standard fixed in the engineers' report, or had not been maintained up to that standard. There is no allegation that the levee having been built, and maintained up to the standard, gave way from imperfection of the work, notwithstanding the floods did not rise above the standard height. The plaintiffs' case, as set forth in their petition, is that in consideration of the compensation, rights, and powers conferred by the legislature upon the Company, it had agreed to protect the alluvial portions of the State from overflow, and that it had failed to protect the plaintiffs' lands which are in the alluvial district from overflow, and hence it was liable in damages. The petition does not allege any neglect or failure of the company to do all that the statutes required it to do anterior to the disaster which occasioned them injury. There must have been a duty or obligation on the part of the defendant to the plaintiffs, and a breach of it to the plaintiffs' injury, and their pleadings must set forth the obligation, and it must appear on their face that the alleged breach was of an obligation which the statutes had imposed. The petition is deficient of those essential averments, and the exception was properly sustained.

· We have been urged to consider and declare the effect of the statute of March 9, 1874, the constitutionality of which is attacked in the supplemental petition, but it has become unnecessary to do so, since our decision is based upon the inherent defects of the pleadings, which are wholly independent of the question of the validity of that law. But if it were otherwise, we should maintain the correctness of the lower court's ruling upon the rejection of the evidence offered by the plaintiffs.

The journals of the two houses of the legislature were offered in evidence to shew that the Act above mentioned did not pass with observance of the forms required for the passage of statutes, in being read in each House on three several days unless there was a dispensation of the rules. Const. art. 42.

We are not to be understood as expressing or intimating an opinion upon the question, whether or not the journals are admissible in evidence to shew want of compliance with the forms necessary to impart to a bill the force of law. The question has been variously determined in different States, and is an open one before us. The People v. Mahaney, 13 Mich. 481. Spangle v. Jacoby, 14 Ill. 297. Miller v. the State, 3 Ohio, 475. Dew v. Cunningham, 28 Ala. 467. The People v. Devlin, 33 N. Y. 269. Broadnax v. Groom, 64 N. C. 244. But the evidence was properly excluded, because there is no averment in the supplemental peti-

tion that would warrant its reception. That petition was framed expressly to attack that Act. By way of exordium, it recites briefly the substantive allegations of the original petition, and then charges the unconstitutionality of that Act because it destroys, or attempts to destroy a vested right, and impairs the obligation of a contract. There is no allegation that the bill did not go through the regular processes of legislative gestation, constitutionally demanded, before it can be ushered into existence as a perfect law. On the contrary, the allegations of the supplemental petition presuppose that the Act was regularly passed, but assert its invalidity, because it is violative of a constitutional right. And surely upon so grave a matter, some averment, striking directly at the point of attack, must be made before evidence can be properly admitted such as was offered in the lower court. It was properly rejected, and for the reason that there was no allegation in either of plaintiffs' petitions under which it could be admitted.

The court below dismissed the plaintiffs' petition on the exception of the defendant to its sufficiency and completeness of allegation.

It is ordered and decreed that the judgment of the lower court is affirmed with costs.