J. A. NEWTON ET AL. *v.* SCHOOL COMMITTEE OF CITY OF CHARLOTTE ET AL.

(Filed 28 February, 1912.)

1. Cities and Towns—School Committees—Discretionary Powers—Aldermen—Supervision.

     The Board of Aldermen of Charlotte have no supervisory power of the school committee of that city in selecting a site, etc., for school purposes. *School Commissioners v. Aldermen, post,* 191, cited and applied.

**2. Cities and Towns—School Committees—Discretionary Powers—Power of Courts—Abuse of Discretion.**

The courts may not interfere with discretionary powers conferred on school committees in their administration of school affairs, unless their action is so clearly unreasonable as to amount to an oppressive and manifest abuse of the discretion conferred.

**3. Same—Evidence.**

In this proceeding involving the right of the school committee of the city of Charlotte to select and build upon a certain site selected for public school purposes, it is held, upon the affidavits tending to show the site complained of was properly selected, that the court cannot inquire into the discretion of the committee in selecting it, there being no sufficient evidence that this discretion was unreasonably or arbitrarily exercised.

APPEAL from MECKLENBURG by plaintiffs from an order made by *W. J. Adams, J.,* 9 December, 1911.

*Clarkson & Duls, E. R. Preston, and Maxwell & Kerans for plaintiff.*

*Burwell & Cansler and Tillett & Guthrie for defendants.*

HOKE, J.  This was an action to restrain defendant, the Board of School Commissioners of the City of Charlotte, from the selection of a certain school site for the Graded School District of North Charlotte.  There was judgment dissolving restraining order, and plaintiffs, citizens and taxpayers of the district, excepted and appealed, assigning for error, first, that the power of supervising the action of defendant board and of ultimate decision in the premises was vested by law in the board of aldermen of the city; second, that if vested in defendant board, they had selected a site so unsuitable and in such flagrant disregard of the rights and interests of the patrons of the school as to render their action illegal and void.

On appeal by the Board of Aldermen of the City of Charlotte in a case just decided, and for the reasons therein stated, the first exception must be resolved against the plaintiff, and this being true, and on the facts as they appear in the present record, we are of opinion that like decision must be made as to plaintiffs' second position.

In numerous and repeated decisions the principle has been announced and sustained that courts may not interfere with discretionary powers conferred on these local administrative boards for the public welfare unless their action is so clearly unreasonable as to amount to an oppressive and manifest abuse of discretion. *Jeffress v. Greenville,* 154 N. C., 499; *Board of Education v. Board of Commissioners,* 150 N. C., 116; *Rosenthal v. Goldsboro,* 149 N. C., 128; *Ward v. Commissioners,* 146 N. C., 534; *Small v. Edenton,* 146 N. C., 527; *Tate v. Greensboro,* 114 N. C., 392; *Brodnax v. Groom,* 64 N. C., 244.

In some of the opinions decided intimation is given that in so far as the courts are concerned the action of these administrative boards must stand unless so arbitrary and unreasonable as to indicate malicious or wanton disregard of the rights of persons affected. It is undesirable and utterly impracticable for the courts to act on any other principle. Speaking to this question in *Ward v. Commissioners,* our present *Chief Justice* quotes with approval from the opinion in *Brodnax v. Groom, supra,* as follows:

"In *Brodnax v. Groom,* 64 N. C., 244, *Pearson, C. J.,* discussed this subject, and said: 'The case before us is within the power of the county commissioners. How can this Court undertake to control its exercise? Can we say such a bridge does not need repairs, or that in building a new bridge near the site of an old bridge it should be erected, as heretofore, upon posts, so as to be cheap, but warranted to last some years; or that it is better policy to locate it a mile or so above, where the banks are good abutments, and to have stone pillars, at a heavier outlay at the start, but such as will insure permanence and be cheaper in the long run? In short,' the Court continued, 'this Court is not capable of controlling the exercise of power on the part of the General Assembly or of the county authorities, and it cannot assume to do so without putting itself in antagonism as well to the General Assembly as to the county authorities and erecting a despotism of five men, which is opposed to the fundamental principles of our Government and the usages of all times past. For the exercise of powers conferred by the Constitution the people must rely upon the honesty of the mem-

bers of the General Assembly and of the persons elected to fill places of trust in the several counties. This Court has no power, and is not capable if it had the power, of controlling the exercise of power conferred by the Constitution upon the legislative department of the Government or upon the county authorities.' "

Considering the evidence presented in the light of these authorities, the court below has clearly made correct decision on the rights of these litigants. While the plaintiffs, acting no doubt under full belief that these rights and interests have been entirely disregarded, have filed strong affidavits tending to show that another place for a school site should be selected, and in fact that in the present state and placing of the population there should be two schools maintained in the district. There is satisfactory evidence on part of the defendants tending to show that the site determined on is near the physical center of the school district; that it is a most attractive site, having desirable elevation and affording ample space for the buildings for the school and playgrounds for the children.

Among other affidavits in support of their position, defendants offer that of Alexander Graham, Esq., the superintendent of the city schools. The affiant, who has now held this position for the past twenty-three years and whose administration has been again and again approved by his associates and fellow-citizens, makes oath as follows: "That he was in attendance, in his capacity as superintendent of the schools, at the several meetings of the board of school commissioners, when the location of the school spoken of in the complaint was determined by these commissioners, and he verily believes that in the selection of this site they, and each one of them, were actuated solely by their interest in the promotion of the cause of education in the city of Charlotte, and the proper use of the fund which the people have put at the disposal of the board for the purpose of buying sites for buildings and erecting houses thereon. He further swears that he is acquainted with the other sites for buildings selected by the board, and he verily believes that each one of these sites is the proper site for school buildings, and will serve the community as proper sites for schools. He

further swears that he is familiar with the other sites mentioned in the complaint, and which the plaintiffs in this action allege should have been selected, instead of the one offered by the Pegram-Wadsworth Land Company, and he expresses the opinion that the board, in rejecting each one of these sites, did that which was best for the interests of the public and the children of that vicinity. He further swears that he believes that the best interests of the administration of the fund of the city will be promoted by consolidating, as much as possible, those few to be well equipped, and, at the same time, to be so located as to be convenient, as far as they may be, to the children of the different portions of the city, and that these selections of sites, in his opinion, should be made, and, as he believes, have been made thus far, by the board with a view to the convenience and interest not only of the present generation, but of those who are to come after, and who will hereafter attend these schools. He further swears that before the Pegram-Wadsworth Land Company had made any offer whatever in regard to the site in question, that he had looked over this school district with a view to determining, in his own mind, what would be the best location for a school building for these two wards, and that he had selected the very site that has been selected by the board, his impression being that the site must be purchased and would not be donated."

In view of this and other supporting evidence, we think his Honor might well hold, as he did in his judgment, "That the board of school commissioners has fairly and properly exercised the discretion vested in the board in respect to the selection of the site for the school building referred to in the complaint." And certainly there is nothing in the record to justify the courts in undertaking to disturb the conclusion they have reached.

There is no error and the judgment of the Superior Court is Affirmed.