Prior to May, 1917, W. B. Tooly was mayor and C. T. Windley, (125) W. D. Morrison, A. Miller, F. M. Bishop, and J. W. Smith were aldermen of the town of Belhaven. On 20 September 1916, these aldermen duly passed certain ordinances declaring that systems of electric lights, waterworks, and sewerage were necessary to the town and provided for an issue of $60,000 in bonds to install these utilities. At the same time a proposition was made by J. B. McCrary Company, contractors, to do the work, which proposition was made and accepted to become effective "when funds are provided"; that is, contingent upon receiving funds from a sale of the bonds.
On 22 February, 1917, the aldermen passed a resolution that the bonds be readvertised for sale on 28 March 1917, in accordance with *Page 136 
the resolution of 20 September 1916, which resolution provided that the bonds should "be sold when issued for not less than par at public sale, after advertisement and competitive bids." On 28 March 1917, W. L. Slayton Co., of Toledo, Ohio, having bid par and more, and being the highest bidder, a resolution was adopted reciting said facts and directing the acceptance of their bid and execution and delivery of the bonds. During April, 1917, and before final acceptance of the bonds by Slayton Co., the regular municipal election for mayor and alderman was held in the town of Belhaven and the question of issuing these $60,000 of bonds and installing these public improvements was an issue. The two members of the old board and mayor, who were candidates for reelection, were defeated and a new board and mayor elected.
On 20 April 1917, after the defeat of the old board in the election, and before the final acceptance of the bonds by Slayton Co., the old board made award on certain bids for materials, on condition, however, in the language of the resolution adopted at that time, that "all bids accepted for light, water, and sewerage material shall be accepted conditionally upon the sale of lights, water, and sewerage bonds."
On 25 April 1917, R. W. Lucas, a citizen and taxpayer, instituted an action against the old board, the members of which had not been reelected in the recent election, and whose terms of office would expire Monday, 7 May 1917, and filed his complaint on 27 April, asking an order to restrain the old board from proceeding further in making and completing contracts for these public improvements, alleging bad faith and that they were seeking on the eve of their retirement from office to fasten obligations on the town to carry out their personal will and to deprive their successors in office of any discretion in the premises. Upon this complaint, used as an affidavit, a restraining order was issued by Daniels, J., which on 27 April was served upon said mayor and aldermen, prohibiting their proceeding further in making or completing contracts with respect to electric lights, waterworks, and sewerage for the town of Belhaven. They were ordered to show cause on (126) Monday, 7 May 1917, why the order should not be continued to the hearing, but did not do so. Immediately on the service of said restraining order, an attorney for said board, by its authority, had a conference with the McCrary Company in Atlanta, Ga., in consequence of which the aldermen, on 30 April 1917, sent an attorney to make a delivery of said $60,000 to Slayton Co., who had not till then accepted the said bonds. Said attorney proceeded to Toledo, Ohio, and on 3 or 4 May 1917, pending said injunction, delivered said bonds to Slayton Co., accepting in payment therefor $3,000 less than par and interest, and on 5 May said board made contracts with McCrary *Page 137 Co. for sundry materials. The expenses of counsel to Atlanta and to Toledo, Ohio, were ordered paid by the old board before going out of office.
On Saturday, 5 May 1917, just before retiring from office, the old board adopted certain resolutions in which is the following language: "The said W. L. Slayton Co. declined compliance with its offer of purchase of said bonds, unless allowed by the board the sum of $2,775 for damages, attorney's fees for approval of the bonds, expense of printing bonds and other expenses, and the said bonds were sold to W. L. Slayton Co. for par and interest from date thereof, allowing deduction aforesaid. The town treasurer is hereby authorized to allow the said W. L. Slayton Co., in settlement for said bonds, the sum of $2,775, for the reason and for the purpose aforesaid." It was in evidence that the bonds could have been printed for $25 or lithographed for $100.
Upon retirement from office of the old board and mayor (who are the defendants in suit by R. W. Lucas), the new board of aldermen, composed of George L. Swindell, J. W. Bell, W. S. Riddick, J. B. Cuthrell, and W. E. Stubbs (who are the defendants in the suit by H. R. Butt), duly qualified on 7 May, and on 22 May they unanimously adopted a resolution rescinding the resolution of the former board to install said plants and in regard to any contract with J. B. McCrary Company, and due notice to said company was promptly given. On 30 May 1917, H. R. Butt brought suit against the new board of aldermen asking a mandamus to compel them "to proceed with the fulfillment of the contracts for the installation of the said system of electric lights, waterworks, and sewerage," and for the appointment of a receiver for the town of Belhaven to take over the corporate property, and to require the "in all manner to carry on and complete the contracts for the installation of the said system." By consent, the two actions were consolidated and tried together.
The court submitted no issues to the jury in the Lucas case, but dismissed the action, from which order Lucas appealed. The defendants in that case did not show cause on 7 May as ordered, and since the action of the new board the injunction should have been granted.
The only issues submitted to the jury in the Butt case were in substance: 1. Did the former board in good faith and in the exercise of its discretion, pass resolutions calling for the (127) installation of a system of water, sewerage, and lights of said town, and authorize the issuance of $60,000 of bonds and to sell the bonds pursuant to said resolutions? 2. Has the new board of Aldermen failed and refused to provide these systems authorized by the former board?
The court charged the jury peremptorily to answer both issues in *Page 138 
the affirmative, and the jury having obeyed, the court gave judgment in the nature of a peremptory mandamus commanding the new board forthwith to install all three systems of public utilities in the town of Belhaven. From this judgment the town of Belhaven appealed.
Announcement was made in open court, both by attorneys for Butt and for the old board in the Lucas case, that the court was not asked to compel the present board of aldermen to perform any contracts made for the installation of water, lights, and sewerage prior to the induction of the present board into office. Though the J. B. McCrary Company was made a party to the suit by order of the court, that company did not allege or ask the court to enforce any contract between it and the town of Belhaven. No material men were parties to the action or have sued on any contracts.
The validity of the $60,000 of bonds in question was upheld in the appeal of Swindell v. Belhaven, 173 N.C. 1. So there is no controversy on that point. Neither is there any exception by J. B. McCrary Company, who are parties to this action. It appeared in an answer filed by Slayton 
Co., and was not denied here, that Slayton Co. had offered to return the $60,000 bonds upon the surrender to them of the $57,225 in cash which they had deposited to the credit of the town in a bank in Washington, N.C.
The only question presented, therefore, is whether the court could by mandamus direct the present board of aldermen of Belhaven to proceed with the installation of lights, water, and sewerage in the town of Belhaven.
There being no question of the enforcement of any contracts with outside parties, it would seem very clear that the right of the present board to rescind a resolution passed by the former board for the installation of these public improvements cannot be gainsaid. It was a matter which rested in the discretion of the former board to pass such resolution, Broadnax v. Groom, 64 N.C. 244, which the courts (128) cannot supervise, and the same power resided in the present board to rescind such order, Ward v. Comrs., 146 N.C. 534;Glenn v. Comrs., 139 N.C. 412.
It would seem, however, that as the contract with the J. B. McCrary Company was conditioned upon funds being provided by the sale of the bonds, that the condition had not been met, and that such contract can have no validity, for the attempted sale to Slayton Co. was invalid because the bonds were not sold at par and interest, which was *Page 139 
in violation of the resolution of the aldermen of 20 September, 1916 (under which the bonds were directed to be issued), which required a sale at par and interest. Also, for the further reason that the bonds were delivered to Slayton Co. in violation of the injunction then in force which directed that no further steps should be taken to effectuate any contract for the execution of the work.
It was also stated in the argument here by counsel for the new board that there would be no opposition to the installation of a plant to furnish electric lights, but that the people of the town had elected them to stay the installation of water and sewerage at this time owing to the increased expense attending it at the preset juncture, and that the board proposed to submit the issuance of bonds for such purpose to a vote of the people.
The action of the court in both appeals is
Reversed.
Cited: Board of Education v. Commissioners, 189 N.C. 652.