BOARD OF EDUCATION OF ALAMANCE COUNTY v. BOARD OF
COMMISSIONERS OF ALAMANCE COUNTY.

(Filed 22 October, 1919.)

1. **Schools—Taxation—Statutes—Constitutional Law.**

Chapter 102, Public Laws of 1919, in relation to an additional levy by the county commissioners to raise a deficiency in the amount of the budget furnished by the county board of education for the maintenance and support of schools is to be interpreted with the constitutional amendment requiring a six-months term.

2. **Same—Special Tax.**

If the levy under chapter 102, Public Laws of 1919, of 35 cents on the one hundred dollars is insufficient for "the support and maintenance" of a six-months term of school in the county, the county may receive from the "State Public School Fund" such amount as necessary for the purpose; and the provision of section 6, "that no county shall be compelled to exceed the limit of 35 cents on the hundred dollars, except as provided in section 7," refers, in the exception, to an increase of the levy permitted by the latter section, which is "not to exceed 25 per cent of the teachers' salary fund" (provided for in section 6), if the amount should then be insufficient, under section 7, after exhausting all sources from which it comes, for the purpose of defraying the expenses necessary for schools, accessories, etc., as provided by section 7.

3. **Same—Mandamus—County Commissioners—Discretion.**

Under the provisions of sec. 8, ch. 102, Laws of 1919, where the board of county education and the board of county commissioners disagree as to the amount needed for the maintenance of a six-months term of the public schools or as to the rate of taxation, or if the county commissioners refuse to levy the necessary tax, a mandamus will lie by the board of county education against the board of county commissioners, based upon the disagreement, by the express requirement of the statute.

CIVIL ACTION, heard by *Devin, J.,* in ALAMANCE Superior Court, the hearing, by consent, being adjourned to his chambers in the city of Durham, where he made the following findings of fact and rendered the following judgment:

This was a mandamus proceeding instituted by the Board of Education of Alamance County against the Board of Commissioners of said county, and was heard before the undersigned judge at chambers, at Oxford, on the 24th day of July, 1919, and at chambers, at Durham, on the 15th day of August, 1919.

No exception was taken by either side as to any matter of procedure, both plaintiff and defendant appearing with counsel. The cause was heard upon the pleadings and exhibits thereto, affidavits and oral testimony, and the court finds the following facts:

The court finds that the plaintiff board of education, in accordance

20—178

with the provisions of chapter 102, Public Laws of 1919, filed with the defendant board of county commissioners, in due form properly verified, the school budget of Alamance County for the school year beginning July, 1919, and ending June 30, 1920.

The summary of the items of the budget showed the rate of tax on each one hundred dollars assessed value of property necessary for salary fund to be 40 cents, and for the building and incidental fund 10 cents, making a total levy asked of 50 cents.

At the May meeting of the board of county commissioners an order was made to levy this rate as asked, but at the meeting on the first Monday in June, 1919, this order was rescinded and there was included in the levy of the regular county taxes made on this date a levy of 35 cents on the one hundred dollars worth of property for special tax for school. In making said levy the board of county commissioners made no distinction between salary fund and that for repairs and incidental expenses.

The court finds, from the carefully prepared affidavit of M. C. Terrell and the other evidence adduced, that the teachers' salary fund necessary to be raised to pay teachers' salaries for the year will be substantially the sum stated in the budget, to wit, $54,812.

The court finds that the total assessed value of property taxable in Alamance County for the year 1919 will be $14,598,420. Therefore, the tax levy of 35 cents would produce, without allowing any deduction for insolvents and expenses of collection, $51,094. This amount will not be sufficient to pay the teachers' salaries.

The court finds that the budget correctly sets forth the amount that will necessarily be required to provide repairs and additions to school buildings and incidental expenses, all of which the court finds are necessary to carry on and maintain the schools of said county for six months.

The correctness of the items of the budget were not controverted by the defendant.

The court finds that the building fund requirement of $10,600 does not include any thing for new school buildings, but is for repairs and additions only to existing school buildings which are rendered necessary to properly house and protect the school children during the ensuing school year.

The court finds that the amount for "administration expenses" $2,182, and that the amount for "expenses of operation and maintenance," $3,049, are reasonable, proper and necessary.

The amount asked for the purpose of refunding borrowed money and for salary of superintendent of public welfare and home demonstrator are not considered necessary to maintain six-months school term,

and are omitted from the findings in this case, though they should in some way be provided for.

The court finds that the amount for "city schools, buildings and expense fund," $4,283, is for repairs and additions to school property and maintenance expenses which are reasonable and proper expenditures for the housing and protection of school children and necessary to the carrying on and maintaining of a six-months school term in said county for the ensuing year.

There are other items of incidental expense necessary to correctly meet statutory requirements, but which are not included in the budget, and are therefore not considered in these findings. These necessary requirements total $20,114.

The court finds that the only "available funds" to meet these expenditures required for "building and incidental expense fund" will amount to $11,194 for the year 1919 in Alamance County, this being the total amount that will be derived from poll tax, dog tax, fines and all other sources.

It therefore appears to the court that the available funds are insufficient to provide for the incidental expenses and for necessary repairs and additions to school buildings, and that there will be a deficiency of $8,520. Considering that a reduction of $1,250 of this amount may be effected by strict economy and a reduction of estimates it follows that a certain deficiency of $7,270 will arise, and that there is no other source from which it can be met but by an additional tax levy of 5 cents on the one hundred dollars worth of taxable property, and the court finds that an additional levy of special tax of this amount is necessary in order to maintain a six-months school term in said county.

The court finds that the rate of special tax for school levied in said county, towit, 35 cents, will be insufficient to maintain schools for six months in every school district in said county as required by the Constitution, and that an additional levy of 5 cents, making the total rate 40 cents on the one hundred dollars assessed value of all taxable property in said county, will be necessary for the performance of the duty imposed by Article IX, sec. 3, of the Constitution of North Carolina.

Therefore, in accordance with provisions of chapter 102, Public Laws of 1919, sec. 8, upon motion of J. Elmer Long, attorney for plaintiff, it is adjudged that defendant board be required to levy an additional special tax for schools in said county of 5 cents on the one hundred dollars worth assessed value of all taxable property in said county. This 21st day of August, 1919.                W. A. DEVIN, *Judge.*

As the decision of the case depends upon a construction of the following sections of the School Law of the year 1919 (Public Laws of

1919, ch. 102), we set them out here for convenience, instead of in the opinion of the Court:

"Sec. 6. On or before the first Monday in May of each year the county board of education shall submit an itemized county school budget to the county commissioners, setting forth the amount of money needed to maintain the public schools of the county six months for the succeeding school year. . . . It shall then be the duty of the board of county commissioners, after deducting the amount to be received from the State Public School Fund, to levy annually a special tax on all property, real and personal, and on all taxable polls, subject to the constitutional limitation of the poll tax, in said county, sufficient to supply the deficiency shown by said budget to be needed for the support and maintenance of the public schools of said county for six months in each school district. The said tax shall be annually levied and collected at the same time and in the same manner as other county taxes are levied and collected, and the funds derived therefrom, together with other school funds in their hands, shall be apportioned and expended by the county board of education for maintaining one or more public schools in each school district for a term of six months in each year: *Provided*, that no county shall be compelled to levy a special county tax of more than thirty-five cents on every one hundred dollars valuation of property, real and personal, and a corresponding tax on every taxable poll for said purpose, except as provided in section seven of the act; and after every county shall have levied and collected the special county tax to the limit stated above, if the funds derived therefrom may be insufficient therefor, said county shall receive from the State Public School Fund an apportionment sufficient to bring the school term in every school district to six months.

"Sec. 7. All poll tax, fines, forfeitures, penalties, and all public school revenues, other than that derived from the State Public School Fund and the special county tax, shall be placed to the credit of the incidental expense fund and the building fund, as provided in the budget, and if this amount is insufficient for these funds, the county board of education may provide in the county school budget for an additional amount not to exceed twenty-five per cent of the teachers' salary fund, and the county tax may be increased sufficiently beyond the maximum levy of thirty-five cents to provide this amount if it shall appear necessary to the county board of education and the county commissioners.

"Sec. 8. In the event of a disagreement between the county board of education and the board of county commissioners as to the amount to be provided by the county for the maintenance of a six-months school term, and as to the rate of tax to be levied therefor, or in the event

of the refusal of any board of county commissioners to levy said tax, the county board of education shall bring action in the nature of a mandamus against the board of county commissioners to compel the levying of such special tax in the manner and form as provided in sections eight hundred twenty-two and eight hundred twenty-four of the Revisal of one thousand nine hundred and five of North Carolina. And it shall be the duty of the judge hearing the same to find the facts as to the amount needed and the amount available from the sources herein specified, which findings shall be conclusive, and to give judgment requiring the county commissioners to levy the sum which he shall find necessary to maintain the schools for six months in every school district in said county. Any board of county commissioners failing to obey said order and to levy said tax shall be guilty of a misdemeanor and shall be prosecuted therefor in the Superior Court by the solicitor of that district."

The defendant, after excepting thereto, appealed from the judgment.

*Long & Long,* for plaintiff.
*Parker & Long,* for defendant.

WALKER, J., after stating the case: It must be admitted that there is some confusion in the terms of the statute as to the limit of 35 per cent. Our view is that the dominant idea and the clear and explicitly expressed purpose was to provide sufficient funds for the support and maintenance of the public schools in the State for the new constitutional term of six months, instead of for four months which was formerly the length of the term, as fixed by the Constitution. We must so construe the law as to execute this intention.

It seems to be conceded that the levy of 35 cents on the one hundred dollars will not be sufficient to take care of teachers' salaries for a six-months term in this county. If that fund is deficient for such purpose, or for "the support and maintenance of the schools," as it is denominated in the act, the county shall receive from the "State Public School Fund" an apportionment sufficient to supply the deficiency, and provide a fund adequate "to bring the school term to six months." This would appear to be a satisfactory and complete provision for keeping that fund to the required amount.

Section 6 of the act of 1919, ch. 102, provides that no county shall be compelled to exceed the limit of 35 cents on the one hundred dollars of property, "except as provided in section 7." We think that the exception therein refers plainly to the further provision in section 7, that the "35 cents" levy may be exceeded to furnish the amount requisite to make up the deficiency in the incidental expense and the

building fund mentioned in the latter section if that fund is inadequate after exhausting all sources from which it comes.

It was supposed that the support and maintenance fund had already been fully established. But the appellee's counsel contends that the limit of 35 cents cannot be exceeded, even to supply any insufficiency in the incidental expense and the building funds, until the county school authorities have applied for and received the apportionment from the State Public School Fund, which is allowed to the county by the concluding words of section 6. That provision does not take effect unless the fund raised by the tax of 35 cents is insufficient for the purpose designated by section 6. In other words, it is intended to supplement the amount so raised by the levy of 35 cents of the one hundred dollars if it falls short of what is necessary to maintain the schools for the six-months period.

This brings us to consider section 8 of the Public Law of 1919, ch. 102, which refers to any differences or disagreements which may arise between the two boards—that is, the county board of education and the board of county commissioners—with reference to the amount needed for the maintenance of a six-months school term, and also as to the rate of taxation therefor, and also what must be done in the event of the refusal of the commissioners to levy the necessary tax. In such cases, the board of education is required to bring an action for a mandamus to compel them to comply with the law and perform their duty.

The defendant contends that section 6 and section 8 refer to the salaries of teachers and the fund to be raised by the 35 cents levy, and it is only where the latter produces an insufficient fund, and there is disagreement between the two boards, that the mandamus will lie; and, further, that application should first be made for the county's apportionment from the State Public School Fund before any action can be brought. But this position is manifestly untenable, for one reason—if there are not others—that section 6 requires that the deficiency in the amount derived from the 35 cents tax shall be supplied from the State apportionment fund until a fund shall be realized which will "be sufficient to bring the school term in every district to six month."

If the amount produced by the levy of 35 cents is to be so supplemented from the State apportionment fund, as to make it adequate for a six-months term in each school district, where would there be any necessity for a mandamus?

If the 35 cents fund is to be replenished from the apportionment fund, the object of the sixth section would be fully accomplished, and no compulsory process would be needed. If the boards disagree "as to the amount to be raised under section 6, or as to the rate of the tax, or the commissioners refuse to levy the proper tax," it may be that the board

of education may proceed, by an action for a mandamus, to force obedience to the requirements of that section, but it is clear—at least to us—that any delinquency on the part of the commissioners, whether it be a failure to act in any material way, under section 6 or under section 7, or a disagreement with the other board, requires the board of education to apply for a mandamus under section 8. Why not. The very same question is raised by a disagreement concerning the proper tax, or rate, under section 7 as under section 6, and it would be strange if the Legislature provided for the one case and did not do so for the other, and the taxes required to be levied under both sections —one as well as the other—was necessary in order to provide for a six-months term. The expense fund and the building fund were essentials in the same sense and in the same degree: Schools cannot be well conducted without schoolhouses and accessories, such as are mentioned in section 7.

Article XIV, sec 3, is just as mandatory in respect to "maintaining in each district one or more public schools for at least six months in every year" as any other provision of that article, and, too, it declares to be criminal a failure of the commissioners to comply with it, and subjects them to indictment. Could it possibly be made more peremptory? *Collie v. Comrs,* 145 N. C., 177.

Speaking of the imperative nature of the requirement of Article IX, sections 1, 2 and 3, as to maintaining schools, it was said, at page 184 and 185: "It is true the people have agreed to support their Government in all its branches by the method of taxation, consisting in reasonable impositions laid upon persons and property, by a standard which they deemed fair and just to all; but one of their leading desires was that their children should receive the advantages of education, so that not only should the Government proceed in the exercise of its ordinary functions for their benefit and advantage, but that the people of the State should be elevated in the scale of intelligence and prepared to enjoy the true blessings of liberty and prosperity for which the compact of government was formed, and, moreover, to further advance their welfare and happiness. This was of the first consideration. . . . If there is a deliberately conceived and carefully stated principle in the Constitution, and one which it is perfectly evident the people desired to be clearly understood and rigidly enforced, it is that embraced in sections 1, 2 and 3 of Article IX, in regard to the schooling of the children of the State. They intended that the State should no longer be debased or retarded in its progress by the ignorance of its' people. It is plain that those who wrote these sections knew, as any intelligent citizen knows, that the surest way to obtain good government, and to enjoy it, is to know how to appreciate its blessings and to

be able to perpetuate it by a proper and intelligent use of it. When it was, therefore, declared that the people *must* be educated, it was just as binding an injunction that the means to that end must be supplied by taxation as it was that the counties or even the State Government should be supported."

Why is one essential mandate of the Constitution any more binding, or obedience to it any more obligatory, than another? What the framers of the Constitution meant was this: That the State and county governments should be maintained by taxation (with certain qualifications), which should be laid upon a principle of equation or due proportion between property and taxes, and within a certain limit; but that, in addition to this sovereign power and corresponding duty, so necessary to the vigorous life of the Government, there should be another, which is equally vital to its continuance under just and wise laws, and that is the separate and independent right to educate the people, by taxation, also, to the extent that is might be necessary to keep open to all the children between certain ages the public schools of the State for "at least four months in every year." Section 1, of Art. IX, declares that "Religion, morality, and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall be forever encouraged." The language of sections 2 and 3, regarding the establishment and maintenance of schools, is mandatory in form and substance. *Board of Education v. Comrs.,* 150· N. C., 116, where the question is fully considered.

But the appellant further contends, that the levying of the tax and fixing the rate is discretionary, and the board of county commissioners cannot be forced to do either by mandamus, but should be left to the free and untrammeled exercise of that discretion. The position is thus stated in the appellant's brief: "The only real question in this case is whether the levying of additional taxes to take care of the incidental expense fund and the building fund shown in the budget prepared by the county board of education is vested in the discretion of the county commissioners. The statute distinctly says that additional taxes may be levied for this fund 'if it shall appear necessary to the county board of education and the county commissioners' these words must of necessity vest the county commissioners with the power to say whether they deem this additional levy necessary. The county board of education must have thought it necessary when they made up the budget but this language of the statute vests this discretion in both boards, and each board equally."

It cannot be denied that a court will not, by its compulsory process, command an act to be done which involves the exercise of a public officer's discretion; but what that means is that it· will not control the

exercise of his discretion, but merely compel him to perform his plain duty by acting, but not in any particular way, for to go beyond this limit would result in taking away his discretion. High on Extr. Legal Remedies (2 Ed.), secs. 24 and 34, puts it this way: "Whenever such officers or bodies are vested with discretionary powers as to the performance of any duty required at their hands, or when in reaching a given result of official action they are necessarily obliged to use some degree of judgment and discretion, while mandamus will lie to set them in motion and to compel action upon the matters in controversy, it will in no manner interfere with the exercise of such discretion or control or dictate the judgment or decision which shall be reached. . . An important distinction to be observed in the outset, and which will more fully appear hereafter, is that between duties which are pre-emptory and absolute, and hence merely ministerial in their nature, and those which involve the exercise of some degree of official discretion and judgment upon the part of the officers charged with their performance. As regards the latter class of duties, concerning which the officer is vested with discretionary powers, while the writ may properly command him to act or may set him in motion, it will not further control or interfere with his action, nor will it direct him to act in any specific manner."

Our decisions are in perfect harmony with the doctrine as just stated. *Attorney-General v. Justices of Guilford,* 27 N. C., 315; *Broadnax v. Groom,* 64 N. C., 244; *Barnes v. Comrs.,* 135 N. C., 27; *Tate v. Comrs.,* 122 N. C., 812; *Ewbank v. Turner,* 134 N. C., 77; *Glenn v. Comrs,* 139 N. C., 412; *Loughran v. Hickory,* 129 N. C., 281; *Burton v. Furman,* 115 N. C., 166; *Board of Education v. Comrs,* 150 N. C., 116, and *Edgerton v. Kirby,* 156 N. C., 347, where we said, at p. 350: "If a public officer fails to perform his legal duty to the public, mandamus will lie to compel him to do so, if it is a mandatory one, but not to control the exercise of a discretion given to him, for it is the nature of a discretion in certain persons that they are to judge for themselves, and, therefore, no court can require them to decide in a particular way or review their judgment by way of appeal, or by any proceeding in the nature of an appeal, since the judgment of the persons to whom the discretion is confided by law would not then be their own, but that of the court under whose mandate or compulsion they acted."

*Justice Bynum* stated the rule with clearness in *Brown v. Turner,* 70 N. C., 93: "Mandamus will lie when the act required to be done, or imposed by law, is merely ministerial, the relater has a clear right and is without any other adequate remedy. Moses on Mandamus, 68. But it does not lie where judgment and discretion are to be exercised, nor to control the officer in the manner of conducting the general duties of the office."

If the two boards, or the commissioners, have a discretion in the matter, the rule applies, and the writ of mandamus should not have issued. But we do not see that any discretion exists, or that a case for the application of the rule can possibly arise. The appellant's counsel based his contention on the requirement in the statute (sec. 7), the words being those quoted below, that they may increase the levy sufficiently beyond the maximum of thirty-five cents, "if it shall appear necessary" to the two boards that this should be done. If the Legislature had stopped there the argument of appellant might have some force, but it does not, and expressly provides, as we think, that if they disagree as to the amount of tax that should be levied, which, of course, includes the necessity for it, or as to the rate, a writ of mandamus shall be applied for by the board of education (sec. 8). An important function of the two boards would be neglected and the intention of the Legislature would be utterly defeated under any other interpretation of the statute. We consider that the meaning of the statute is so palpable as to be entirely free from doubt.

The scheme provided for supporting the public schools in each district for a six-months term, under the mandatory provisions of the Constitution, and the requirements of the statute would prove futile, if we should decide otherwise. The language being clear and unmistakable, this cannon of interpretation applies: "When a law is plain and unambigious, whether it be expressed in general or limited terms, the Legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction." *Fisher v. Bagort,* 2 Cranch (U. S.), 399; *Abernethy v. Comrs.,* 169 N. C., 631; Sedgwick Stat. Constr., p. 231.

If we so interpret the law, the proceedings below were undoubtedly correct. *School Comrs. v. Board of Aldermen of the City of Charlotte,* 158 N. C., 191, fully sustains our view and somewhat resembles this case in respect to its facts. The paramount intention was to support and maintain schools for the term of six months, as provided by the Constitution, which was recently amended, and that taxes should be levied to accomplish that purpose.

Affirmed.