DR. W. A. PETERS ET AL. v. PASQUOTANK HIGHWAY COMMISSION.

(Filed 13 September, 1922.)

1. **Injunction—Evidence—Highways—Discretion of Commissioners.**

The exercise of a sound discretion by a county highway commission is a legislative power delegated to it, with which the courts will not interfere by injunction or otherwise upon the mere allegation that the commissioners were acting for the private benefit of some of them, and not in the public interest, without evidence or proof thereof.

2. **Appeal and Error—Injunction—Evidence—Review.**

On appeal from an order of the judge of the Superior Court dissolving an injunction, the Supreme Court may review the evidence thereon.

APPEAL by plaintiffs from *Bond, J.,* at chambers in Elizabeth City, 28 July, 1922, dissolving the restraining order theretofore granted. From PASQUOTANK.

*C. R. Pugh and Aydlett & Simpson for plaintiffs.*
*J. B. Leigh, A. D. MacLean, and Meekins & McMullan for defendants.*

CLARK, C. J. This is an action for a permanent injunction instituted by certain residents and taxpayers of Pasquotank against the highway commission of that county to enjoin them from hard-surfacing the road from Blackhead Signpost through the Foreman stockyard to Bundy's gate. Upon allegations and affidavits that the old route was for the general good of Mt. Hermon Township, and that the new route is for the special benefit of two members of the highway commission (which was denied), a temporary restraining order was granted, returnable 28 July, and at the hearing it was dissolved.

Without going into the matter in detail, we think that the refusal to continue the temporary restraining order was proper.

In *Brodnax v. Groom,* 64 N. C., 244, *Pearson, C. J.,* said, in denying an injunction as to the location of a bridge: "This Court is not capable of controlling the exercise of power on the part of the General Assembly,

or of the county authorities, and it cannot assume to do so without putting itself in antagonism as well to the General Assembly as to the county authorities, and erecting a despotism of five men, which is opposed to the fundamental principles of our Government and the usages of all times past. For the exercise of powers conferred by the Constitution, the people must rely upon the honesty of the members of the General Assembly and of the persons elected to fill places of trust in the several counties. This Court has no power, and is not capable if it had the power, of controlling the exercise of power conferred by the Constitution, upon the legislative department of the Government, or upon the county authorities."

In *Newton v. School Committee,* 158 N. C., 186, it is said: "In numerous and repeated decisions the principle has been announced and sustained that courts may not interfere with discretionary powers conferred on these local administrative boards for the public welfare unless their action is so clearly unreasonable as to amount to an oppressive and manifest abuse of discretion. In ·some of the opinions decided intimation is given that insofar as the courts are concerned, the action of these administrative boards must stand, unless so arbitrary and unreasonable as to indicate malicious or wanton disregard of the rights of persons affected. It is undesirable and utterly impracticable for the courts to act on any other principle."

In *Supervisors v. Comrs.,* 169 N. C., 548, we said: "We find nothing in this evidence which justified an injunction upon the ground of fraud or misappropriation of funds by the county commissioners. It may or may not be that the county commissioners are using the very best judgment in selecting the roads to be worked in Pactolus Township. The road supervisors of the township certainly disagree with them as to that; but as has been said in *Brodnax v. Groom, supra,* and many other cases, we are not authorized to supervise such matters. The greatest and most infallible of all judges disclaimed jurisdiction in a matter not committed to him. In the language of Scripture, Who made us judges over such matters? Luke xii, v. 14. In this case, as Virgil puts it, *'Non nostrum tantas componere lites.'* However gratifying it might be to the judiciary to be deemed competent, by reason of any supposed superior wisdom, to decide and settle controversies over local differences of opinion in administering the affairs of a county, the judiciary have no special qualifications which make them better fitted than our fellow-citizens who have been chosen by the people to administer such matters which are purely administrative matters, about which good men may differ, and the decision whereof rests with the local officials elected by and responsible to the electors of the locality. The courts can only interfere when there is such fraud or malversation as calls for an indictment, or such fraud

or oppression is attempted as clearly requires that the further action of the administrative board shall be stayed to prevent the misappropriation of public funds. The courts are not empowered to supervise the action of administrative boards because of a difference of opinion as to the action taken or contemplated by the officials charged with the duties of administration. The restraining order should have been dissolved."

*Newton v. School Committee, supra,* and *Supervisors v. Comrs., supra,* are both cited with approval in *Edwards v. Comrs.,* 170 N. C., 448, in which case, as in this, there was allegation, and nothing more, that the commissioners were acting for private gain, and in which we sustained the judge below in the dissolution of a similar restraining order, saying: "In the exercise of their powers and in the absence of express legislative direction to the contrary, they (the county commissioners) are not to be controlled by a vote of the localities affected, either informal or otherwise, and whenever it is shown that they have officially dealt with a question lawfully submitted to their judgment, their action may not be controlled nor interfered with by the court unless it is established that there has been a gross and manifest abuse of their discretion, or it is clearly made to appear that they have acted, not for the public interest, but in promotion of personal or private ends. We were referred, on the argument, to *Stratford v. Greensboro,* 124 N. C., 127, in support of the position that, on the present record, the action of the commissioners could well be made the subject of judicial scrutiny and control, but in that case there was specific allegation with uncontradicted evidence tending to show that the action of the city authorities was in pursuance of a contract admittedly entered into with the individual defendant, and making it, upon all the evidence, entirely probable, if not certain, that the measure complained of was in promotion of a personal and private scheme, in favor of the individual defendant and not in furtherance of the public interests. In that case the allegations were specific and definite of issuable facts tending to establish official default, and bear very little resemblance to allegations appearing in the present appeal." To the same effect, *Davenport v. Board of Education,* 183 N. C., 570.

"It is true that when the injunctive relief sought is not merely ancillary to the relief demanded, but is itself the principal relief sought, the courts will generally continue the injunction to the hearing upon the making out of a *prima facie* case. But this rule does not hold good in cases where important public works and improvements are sought to be stopped. In such matters, in the interest of the public good, the courts will let the facts be found by a jury before interfering by injunction." *Jones v. Lassiter,* 169 N. C., 750.

The rule stated above as to denying injunctions against public works and administrative boards is absolute, and admits but two exceptions,

one allowing an injunction where the undertaking sought to be enjoined is unconstitutional and contrary to law, as in *Smith v. School Trustees,* 141 N. C., 143, and the other being where the action sought to be enjoined is "so arbitrary and unreasonable as to indicate malicious or wanton disregard of the rights of the persons affected," or "when there is such fraud or malversation as calls for an indictment, or such fraud or oppression is attempted as clearly requires that the further action of the administrative board shall be stayed to prevent the misappropriation of public funds," as in *Stratford v. Greensboro, supra.*

In *Cobb v. R. R.,* 172 N. C., 58, the injunction was sustained upon allegation and proof that the action enjoined was an attempt by way of condemnation to take private property for a private use under the guise of a public use, which the Court said raised a judicial question, and if it turned out that the proposed taking was for a private use only, as alleged, the right of condemnation would be denied. Further, there was plenary evidence to show that the change in location of the road was for the private benefit of the defendant railroad company, to permit it to blast rock in a manner dangerous to the lives and property of plaintiff and his family, and that *no public interest* was subserved. In this case there is no question of condemnation involved, nor any taking of private property under false pretenses, nor allegations to that effect, as in *Stratford v. Greensboro, supra,* and *Cobb v. R. R., supra,* while on the other hand the public benefit from the road is practically conceded.

In injunction proceedings we can review the evidence, and on such review we think the judgment in this case should be

Affirmed.