BOARD OF SUPERVISORS PUBLIC ROADS OF PACTOLUS TOWNSHIP v. BOARD OF COMMISSIONERS OF PITT COUNTY.

(Filed 6 October, 1915.)

**1. Roads and Highways—County Commissioners—Discretionary Powers— Constitutional Law.**

The county commissioners are charged with the duty of establishing roads in the county and maintaining them, and are authorized to pay therefor out of the county treasury; and when this is done by them in the exercise of their discretion, without fraud and malversation, the courts may not interfere.

**2. Same—Evidence—Dedication—Pleadings.**

Where township supervisors of roads seek to enjoin the county commissioners from work on a road on the ground that the road was not a public road, and it is alleged in the answer of the county commissioners that the road is a public road, which is confirmed by the owner of the land over which it runs, the effect is that of a dedication and acceptance, and the injunctive relief sought should be denied.

**3. Roads and Highways — County Commissioners — Discretionary Powers— Township Supervisors—Constitutional Law—Statutes.**

Where by special legislative enactment the commissioners of a county are authorized to levy a special road tax upon the property of each township annually, and apply funds so collected from each township exclusively to road improvements therein, the discretionary power vested in the commissioners, under the Constitution, as to working any particular road, or which roads in the township shall be worked, etc., is not interfered with; and the powers of the township supervisors of roads, created by special statute, are, in this respect, subject to that of the county commissioners.

APPEAL by defendants from *Bond, J.,* at August Term, 1915, of PITT.

*Albion Dunn and Harry Skinner for plaintiffs.*
*S. J. Everett and Julius Brown for defendants.*

CLARK, C. J.   This action is brought by the board of supervisors of Pactolus Township in Pitt County against the board of commissioners and county treasurer of said county, to enjoin the county commissioners of Pitt from making any further improvements on the road leading from the bridge across Tar River at Boyd's Ferry, Pitt County, to the Pactolus and Washington road.

The plaintiffs allege that said road is a private road and not a public road, and seek to enjoin the board of county commissioners from ordering payment of bills for the improvement of said road and to restrain the county treasurer from paying such orders.   The defendants deny that the road in controversy is a private road, and allege that it is a public road and that they are empowered to work the same under the general law, ch. 714, Laws 1905.   This law makes it obligatory upon the county board of commissioners to have the roads of Pitt County worked and to pay for the same out of the township road fund of the respective townships in which the roads lie.

In *Davenport v. Commissioners*, 163 N. C., 147, this Court held that the bridge at Boyd's Ferry is a public ferry and that the road leading up to said ferry on the north and south sides of said river are public roads.   Indeed, independent of that decision, the county commissioners, who are charged with the duty of establishing and working the roads of said county, state in their answer that said road is a public road, and the owner of the land over which it passes asserts the same.   This would establish that it was a public road by dedication, even if there had not been the adjudication above cited.   *Tise v. Whitaker*, 146 N. C., 376. Further, as was shown in the evidence in the former case of *Davenport v. Comrs.*, in colonial days, the royal post road between Williamsburg, Va., and Charleston, S. C., crossed the Tar River at Boyd's Ferry, which at that time was known as Salter's Ferry, afterwards as Watkins' Ferry, and later on as Boyd's Ferry.   7 Colonial Records, 149, 413, for 1766. In 5 Colonial Records, 1211, Rev. Mr. McAden, in his Journal for 2 April, 1756, mentions being at Salter's Ferry on Pamlico River.

In *Glenn v. Comrs.*, 139 N. C., 412, it was held that where a bridge had been constructed by a citizen at his own expense, who had opened up public roads leading to the bridge on both sides of the river and the commissioners accepted the bridge as a public bridge, this made the roads leading to it public highways.

It was further held in that case: "The order in which work upon the public highways is to be performed is within the sound discretion of the county commissioners, and when they have exercised this discretion honestly and in a manner which they conceive to be for the best interest of the county it excludes any interference by the courts."   This case is cited with approval in *Davenport v. Comrs.*, in which it is said that, "In the absence of fraud or oppression, such matters are within the

sound discretion of the county commissioners and will not be reviewed by the courts."

The present case is exactly on all-fours with *Brodnax v. Groom,* 64 N. C., 244. In that case certain taxpayers sought an injunction against the county commissioners to prohibit their levying a tax to build a $10,000 bridge at a point which said plaintiffs contended was an inconvenient and unsuitable place, where the bridge would not be connected with any public road, and that it was entirely too costly and a waste of public funds. This Court held that this was a matter for the administrative department of the Government which under our system of local self-government was vested in the county commissioners, who were elected by the people of the county, and amenable to their control; and that the courts had no right to intervene and supervise the exercise of such powers; and that in the absence of fraud or oppression the courts could not intervene. *Chief Justice Pearson* used these words, which this Court has often quoted and which should always be borne in mind: "In short, this Court is not capable of controlling *the exercise* of power on the part of the General Assembly, or of the county authorities, and it cannot assume to do so without putting itself in antagonism as well to the General Assembly as to the county authorities and *erecting a despotism of five men,* which is opposed to the fundamental principles of our Government and the usages of all times past."

He further said: "For the exercise of powers conferred by the Constitution the people must rely upon the honesty of the members of the General Assembly and of the persons elected to fill places of trust in the several counties. This Court has no power, and is not capable if it had the power, of controlling the exercise of power conferred by the Constitution upon the legislative authority of the Government or upon the county authorities."

Under the Constitution and the statute the county commissioners are vested with the control of the county roads of said county. It is true that by virtue of ch. 714, Laws 1905, the commissioners of Pitt are authorized to levy a special road tax upon the property of each township annually, and that the funds so collected in each township shall be set apart to be used solely for the improvement of the roads in the townships where it is collected. But whether one particular road or another or what roads in said township shall be worked is a matter which rests in the county commissioners. The powers of the township supervisors of the roads in this respect are subject to that of the county commissioners.

If these defendants were proceeding to embezzle the fund, or fraudulently misappropriate it, they would be liable to indictment, and in a proper case an injunction would lie to restrain the misuse of such fund. The findings of fact upon an injunction are subject to review on appeal,

and we find nothing in this evidence which justifies an injunction upon the ground of fraud or misappropriation of funds by the county commissioners. It may or may not be that the county commissioners are using the very best judgment in selecting the roads to be worked in Pactolus Township. The road supervisors of the township certainly disagree with them as to that; but as has been said in *Brodnax v. Groom, supra,* and many other cases, we are not authorized to supervise such matters. The greatest and most infallible of all judges disclaimed jurisdiction in a matter not committed to him. In the language of Scripture, "Who made us judges over such matters?" Luke XII, v. 14. In this case, as Virgil puts it, *"Non nostrum tantas componere lites."*

However gratifying it may be to the judiciary to be deemed competent by reason of their supposed superior wisdom to decide and settle controversies over local differences of opinion in administering the affairs of a county, the judiciary have no special qualifications which make them better fitted than their fellow citizens who have been chosen by the people to administer such matters. These are purely administrative matters about which good men may differ, but the decision thereof rests with the local officials elected by and responsible to the electors of the locality. The courts can only interfere when there is such fraud or malversation as calls for an indictment, or such fraud or oppression is attempted as clearly requires that the further action of the administrative board shall be stayed to prevent the misappropriation of public funds. But the courts are not empowered to supervise the action of administrative boards because of a difference of opinion as to the action taken or contemplated by the officials charged with the duties of administration.

The restraining order should have been dissolved.

Reversed.