TOWN OF NEWTON ET ALS. v. STATE HIGHWAY COMMISSION OF NORTH CAROLINA.

(Filed 9 June, 1926.)

**1. Highways—Roads and Highways—Statutes—State Highway Commission—Discretionary Powers—County Seats.**

Where a map showing the existing highways of a state is used by the Legislature showing the existing roads connecting the county seats, and is made a part of the general statute establishing a state-wide plan thereof, and a state highway commission is also therein created with general authority to relocate, change or discontinue the highways as they appear upon the maps, with proviso that this discretionary power should not extend to county seats as appeared on the map, the discretionary power, by the intendment and express words of the statute, does not extend to discontinuing or relocating the roads connecting the county seats, as outlined upon the map, and thus change the road from its former location running to and from the courthouse square.

**2. Same—Equity—Injunction.**

While the courts may not determine the location of highways in a state-wide plan thereof, enacted by statute giving control and authority to a state highway commission created for the purpose, equity will enjoin the relocation of a highway in a county when such power in the commission has been reserved from the discretionary power given it.

**3. Highways—Roads and Highways—Statutes—Courts—State Highway Commission.**

The question of whether the relocation of a state highway at a county seat connecting the various county seats of the State, will cost more than to continue its location as the statute requires, is one for the Legislature, and neither for the courts nor for the State Highway Commission to determine.

STACY, C. J., dissenting; ADAMS, J., concurring in dissenting opinion.

CIVIL ACTION, heard before *Webb, J.,* at Chambers, in Shelby, N. C., 10 May, 1926.

The following judgment was rendered:

This cause coming on to be heard before me at Chambers at Shelby, N. C., on 10 May, 1926, upon a temporary restraining order issued 27 April, 1926, by his Honor, Thos. J. Shaw, a judge of the Superior Court of North Carolina, by the terms of which the defendant was enjoined and restrained from awarding any contract or contracts for the grading of a road between Statesville and Newton along the proposed new route indicated specifically by the yellow lines on plaintiffs' map, Exhibit A, and from building bridges upon said route, and being heard, and all parties in interest being represented by counsel, and after full and careful consideration of the pleadings and affidavits offered, as well as the argument of counsel, the court finds as follows:

1. That two routes were surveyed for the location of the road from Statesville, the county seat of Iredell County, to Newton, the county seat of Catawba County, and these two routes are indicated on the map, plaintiffs' Exhibit A, the southern route being indicated by the red line and the northern route by the yellow line.

2. The southern route follows in a general way the present road between Statesville and Newton, and is shown on the map, which is part of chapter 2, Public Laws of 1921, indicating the designation and adoption of highways in North Carolina constituting a part of the State Highway system, and the same has hitherto been accepted by the State Highway Commission and taken over and is now maintained as a part of route 10 of the State Highway system. The distance from Statesville to the courthouse in Newton over the southern route, according to the survey made by the defendant, would be 22.81 miles, and the road would cross the Catawba River on the double track steel bridge constructed across this river under State supervision a few years ago. This road would enter the town of Newton in the southeastern portion and pass by the courthouse and along the principal street through the center of the town, and thence to Hickory over the present hard-surface road from Newton to Hickory.

3. The northern route, as indicated by the yellow line on the map, which the defendant has adopted and purposes to build from Statesville to Newton, does not go over any part of the present road between Statesville and Newton after leaving the corporate limits of Statesville and crosses the Catawba River several miles north of the present steel bridge and enters the town of Newton just inside of the corporate limits of said town on the northern side and at a distance of about 1⅛ miles from the courthouse and connects with the Newton-Hickory hard-surface road at that point, and route 10 proceeds from this point in a northerly direction over the present hard-surface road to Hickory. The distance from Statesville over the yellow route where it connects with

the Newton-Hickory road, and following this road to the courthouse in Newton, is 21.42 miles, making a difference in distance on the northern route over the southern route of 1.39 miles between Statesville and Newton.

4. The cost of grading and constructing the road on the northern route would be less than on the southern, but if the southern route was adopted it would not be necessary to build a new bridge across the Catawba River; whereas, on the northern route it would require a considerable expenditure to build the bridge across the Catawba River. If the northern route should be built there is no barrier to prevent an entrance to the town of Newton so that route 10 could pass by the courthouse, or through the center of the business or residential section of Newton, and still connect with the present hard-surface road from Newton to Hickory.

5. The road from Statesville to Newton is a part of route 10, one of the great thoroughfares of the State, and if it is so constructed as not to pass through the town of Newton, but merely to skirt the northern boundary of said town, it would deny to the town of Newton the benefits and advantages arising from the heavy through traffic passing over this State thoroughfare and from the legitimate advertising that the town would get as a result thereof, and would deprive this flourishing and growing county seat of the benefits which accrue to a town being situated and located on the main line of travel, and this would result in irreparable injury and damage to the town of Newton.

Upon a careful review of chapter 2 of the Public Laws of 1921, establishing the State Highway Commission and providing for a system of State highways, it is manifest that the General Assembly had a dual purpose in mind, to wit, (1) that of creating a State system of highways, and (2) that of constructing the highways so that it would form a county-seat to county-seat system.

In order to enable the Highway Commisssion to properly function it was necessary to confer upon the commission broad discretionary powers, and with this purpose in mind the Legislature lodged the ultimate power and authority in the commission to locate the roads which constitute the State system, and gave it the power to change, alter, add to or discontinue any of the roads forming a part of the road system, as shown on the map which was made a part of the act of 1921. But there was one qualification and limitation of this power. It appears in the proviso at the end of section 7 as follows:

"*Provided,* no roads shall be changed, altered or discontinued so as to disconnect county seats, principal towns, State or national parks or reserves, principal State institutions and highway systems of other states."

Manifestly the commission is clothed with the power and authority to make such changes in the location of State highways as it may deem wise, in its sound discretion, subject to the limitation placed upon it by the foregoing proviso, and the court has no power to designate locations or determine routes. However, the terms of the proviso are positive and mandatory, and not uncertain or discretionary. In the exercise of a legal discretion they may determine whether a road shall be changed, altered or discontinued if they observe the mandate of the proviso. Therefore, the question in the case is: Has the commission complied with the intent and meaning of this proviso by changing the route of the road from Statesville to Newton so that, instead of running from county seat to county seat, it runs from the center of Statesville to a point just inside the corporate limits of the town of Newton and one and one-eighth of a mile from the courthouse or center of town, leaving the whole town of Newton to the south, and continuing as a part of route 10 in a northerly direction to Hickory?

The answer to this question can only be obtained by an interpretation of the meaning of this proviso, and, in order to properly interpret the proviso, an effort should be made to arrive at the true legislative intent. Where this intent is not clearly expressed it is always presumed that a statute was intended to have the more reasonable and beneficial operation permissible from the language used, and the effects and consequences of the one construction or the other may be resorted to as important aids in determining the intent and meaning. The Legislature clearly provided that county seats should not be disconnected. The building of a system of roads from county seats to county seats must have some definite situs or location. The distance from one town to another is measured by the distance from the center of each town and not from the outside corporate limits.

Another rule of interpretation is that the intention of the lawmaking power is to be ascertained by a reasonable construction of the act and not one founded on mere arbitrary conjecture. Applying the well known principle of construction to this proviso it seems that the Legislature was jealous of the rights of county seats and principal towns, and made a special exception in an effort to secure to them their rights with reference to the location of highways. I must believe that the Legislature intended by this proviso to do more than require that the roads should come inside the corporate limits, and leave the whole town untouched by a great through line of traffic. Coming just inside of the corporate limits of a town is not coming to town, and it is not so understood in the ordinary affairs of life. It is a matter of common knowledge that the State highways generally run through the county seats and principal towns and not merely skirt the outside limits, and I cannot

hold that the proposed location of this road as it enters the town of
Newton is a compliance with the terms of the proviso of the statute, or
that it is in harmony with the legislative intent.

The court cannot direct the location of the road and has no disposi-
tion to hinder or delay the construction of this important link in
route 10, and therefore modifies the restraining order heretofore issued
to the extent that the portion of the road situated in Iredell County is
hereby released from this injunction and restraining order, but con-
tinues the restraining order and injunction in full force and effect as
to that portion of said road located in Catawba County, and the de-
fendant, its agents and servants, are hereby permanently restrained and
enjoined from awarding any contract or contracts for the grading of
said road or building of said bridges along the proposed route from the
Catawba River to the town of Newton, as indicated substantially by the
yellow lines on plaintiffs' map, Exhibit A.

From the foregoing judgment the defendant appealed.

*Clyde R. Hoey, W. A. Self, Wilson Warlick, and W. C. Feimster for
plaintiffs.*

*Attorney-General Brummitt, Assistant Attorney-General Ross, and
A. A. Whitener for defendant.*

BROGDEN, J. Chapter 2, Public Laws 1921, commonly known as the
Road Act, when stripped of all bare technicalities and thin-spun dis-
criminations, creates certain unmistakable objectives. These objectives
may be classified as follows:

First. A certain type of public service for the people of the State,
to wit, "the development of agricultural, commercial and natural re-
sources of the State." Second. For the purpose of making this service
effective there was created a definite instrumentality, to wit, a State-
wide system of highways of approximately fifty-five hundred miles "of
hard-surfaced and other dependable roads." Third. In order that there
might be no confusion as to the immediate objects of this service the
act designated them by name, to wit, all county seats, all principal
towns, State parks and principal State institutions. Fourth. The high-
way system should serve these designated institutions by the most "prac-
tical routes."

Let it be observed in passing that the service by the highway system
to the designated institutions is the controlling idea, and the "practical
route" is subordinate to the larger idea of the service to be rendered.

To the end that there might be no uncertainty as to how the highway
system should be made up, the Legislature adopted a map showing in
detail the roads which it proposed should "constitute the State highway

system." The map, therefore, became as solemn and binding legislative declaration as any other paragraph, phrase or clause of the road law.

Having defined the service to be rendered, and having created a system of roads as an instrumentality for promoting and guaranteeing the service contemplated, and having designated the immediate objects of the service, the Legislature created an administrative body known as the Highway Commission to execute its program so formulated.

Realizing that in order to execute with economy and efficiency the program of improvement, it delegated certain discretion to the Highway Commission in these words: "The roads so shown can be changed, altered, added to or discontinued by the State Highway Commission." Realizing further that this discretion, so delegated, should be limited and safeguarded, in so far as it affected the immediate objects of the service to be rendered by the road system, the Legislature said, in effect, that no road serving a county seat should be altered or discontinued so as to withdraw therefrom the service of the highway system.

The exact language of the limitation is: "*Provided,* no road shall be changed, altered or discontinued so as to disconnect county seats," etc.

Acting in obedience to power conferred upon it by the road law, the defendant, Highway Commission, adopted as a part of the State highway system the road between Statesville and Newton and took charge of said road and maintained the same as a part of route 10. This road entered the town of Newton in the southeastern portion and passed by the courthouse and along the principal street through the center of the town, and thence to Hickory over the present hard-surfaced road from Newton to Hickory. The defendant now proposes to abandon this road and to construct a new road from the center of Statesville to connect with the hard-surfaced road running from Newton to Hickory. This proposed road would enter the town of Newton just inside of the corporate limits of said town on the northern side, and at a distance of about 1⅛ of a mile from the courthouse. The plaintiff thereupon instituted this action to restrain the defendant from constructing said road in the manner proposed, alleging in substance that the new road was a total abandonment of the present road, and, in addition thereto, that the new road, as proposed, skirted the town of Newton, touching it only near its northern limits, and that this action was contrary to law and would result in irreparable damage to the plaintiff and deprive it of the benefit to which it was entitled. The trial judge found the facts, which will appear from an examination of the judgment rendered, and which may be recapitulated in brief as follows: (1) That the proposed road, known as the northern route, is 1.39 of a mile shorter than the present road; that the cost of grading and constructing the road on the northern route would be less than on the southern, but, if the northern

route were adopted, it would be necessary to build a new bridge across the Catawba River, which would require a considerable expenditure of money. (2) That the said northern route or proposed route runs from the center of Statesville to a point *just inside of the corporate limits of the town of Newton* and 1⅛ of a mile from the courthouse or center of the town, *"leaving the whole town of Newton to the south."*

We now approach the front line trenches of the litigants, where the issue is to be fought out and determined.

The defendant takes up its position behind what is known in the law as the doctrine of discretion, which consists of those discretionary powers which can be exercised by administrative boards and with which the courts cannot interfere. The principle is expressed thus: "In numerous and repeated decisions the principle has been announced and sustained that courts may not interfere with discretionary powers conferred upon these local administrative boards for the public welfare unless their action is so clearly unreasonable as to amount to an oppressive and manifest abuse of discretion." *Newton v. School Committee,* 158 N. C., 186. This principle is woven into the law by a long and unbroken line of decisions, beginning with *Brodnax v. Groom,* 64 N. C., 244. But it must be observed that these discretionary powers · must be conferred on the local administrative board or result from necessary implication. The proviso of section 7 of the Road Act, in express language, not only fails to confer a discretion as to county seats, but, in positive language, actually withdraws it. When a statute speaks plainly and in no uncertain or ambiguous terms, the voice of discretion cannot be heard; otherwise administrative boards, under the guise of discretion, could set at nought the legislative will and clothe themselves with the attributes of sovereignty. That this is the correct interpretation of the law appears from the opinion of *Adams, J.,* in the case of *Cameron v. Highway Commission,* 188 N. C., p. 88, in these words: "As we understand it, the very purpose of this proviso was to exclude the construction that, as to the roads therein described, the defendants should have the discretionary power upon which they now insist. In the exercise of a legal discretion they may determine whether a road shall be changed, altered or discontinued if they observe the mandate of the proviso. But this mandate must be observed; and if it be granted that county seats, State parks, national parks, and forest reserves may be identified *ex vi termini,* it is not so with respect to 'principal towns'· or principal State institutions."

The defendant plants itself behind the *Cameron case.* It must be observed at the outset, in analyzing the *Cameron case,* that it was dealing with the question of "principal towns" only, and not with the question of county seats. The *Cameron case* held that "the decision as to

what are principal towns within the meaning of the act is a mixed question of law and fact, subject to judicial review as it ordinarily prevails in such cases," because "principal towns" cannot be identified *ex vi termini*. But this reasoning does not apply to county seats because county seats have a fixed meaning in the law and are identified *ex vi termini*. Therefore, the reasoning of the *Cameron case* has no application here, and the learned justice who wrote the opinion, had in mind that a different principle of law would apply to a county seat when he used this language: "and if it be granted county seats, State parks, national parks, and forest reservations may be identified *ex vi termini*, it is not so with respect to principal towns or State institutions."

It is clear, then, that upon this aspect of the controversy the *Cameron case* not only fails to support the defendant's contention, but actually supports the contrary view.

The *Cameron case* very properly holds that the road map, adopted by the Legislature as a part of the road law, was tentative, but it also holds that this road map was not tentative in so far as it related to the service to be furnished by the road system to county seats. This idea is thus expressed in the opinion: "The terms of the proviso are positive and mandatory and not uncertain or discretionary. . . . Nothing else appearing, this clause would probably be construed as conferring powers to be exercised in the discretion of the defendant, but immediately following are the words: '*Provided,* no roads shall be changed, altered, or discontinued so as to disconnect county seats,' " etc. In other words, the obvious meaning of the statute is that any road shown on the map may be changed or altered in the discretion of the Highway Commission except that no road as shown on the map shall be changed, altered or discontinued so as to disconnect county seats.

The whole proposition, therefore, resolves itself, in the final analysis, to a determination of the question of whether or not the proposed road entering the town of Newton just within its outmost limits or boundaries is in effect disconnecting the county seat.

When the defendant completed its road to Statesville, the next legal objective was Newton because Newton is the next county seat to the west. By the ordinary processes of reasoning, it must be assumed that an objective created by law was of such outstanding importance as to require and command the full service of the highway system. The Road Act required these highways to run "to all county seats." "Running to a county seat" is quite different from running around a county seat. In *Farmers Turnpike Road v. Coventry,* 10 Johnson (N. Y.), 389, the principle was thus declared: "The plaintiffs, by their charter, were entitled to carry the road 'to the city of Hudson.' This did not

mean that the road was to terminate on arriving at the north bounds of the city, which are the middle of Major Abraham's Creek, and several miles from the compact part of the city. The words are to receive a more reasonable interpretation, in reference to the subject-matter, and the public object of the grant, which was to open a good road from Troy to the compact part of the city of Hudson." This case has been cited with approval in *People v. Flammer,* 137 Mich., 399; *Rio Grande R. R. v. Brownsville,* 45 Texas, 88; *Central Ga. R. R. v. Union Springs R. R.* (Ala.) ; 2 L. R. A., N. S., 144.

In reply to this proposition, however, the defendant insists that when its proposed road actually enters the corporate limits at a point just inside thereof, it has complied with the law, and, to that extent, is just inside the law. If the reasoning of the defendant is sound, in giving a technical, restricted, and literal construction to the words: "connecting the various county seats," then there is no necessity for running these highways into the corporate limits of the county seats at all. The intent of the statute, by such reasoning, would be fully complied with by running these great highways so as to connect with a road that did connect with the street system of the town, and therefore a county seat could be "connected" even though the highway system did not come within one mile or ten miles of its boundaries. If it be conceded that this is a compliance with the letter of the law, it must also be borne in mind that "the letter killeth, but the spirit giveth life."

The defendant insists that it would cost approximately two hundred thousand dollars ($200,000) more to build the southern route as shown on the map, referred to, than the northern route which it proposes, and, therefore, that, as a public agency, it should conserve public money. This is undoubtedly a sound proposition. But if the road law required these roads to serve the county seat, in accordance with the legislative plan, then the question of expense is one for the Legislature and not for the courts or the Highway Commission. In addition, the argument cannot be successfully maintained that, because it is cheaper to disobey the law than to observe it, therefore disobedience is justifiable.

It is also urged by the defendant that radical departures have been made in other county seats in the State. There is no finding of fact in regard to this in the record; but, assuming that this has been done, prior departures from the law cannot be used as a reason for a failure to comply with the mandate of the statute.

The final contention of the defendant is that the construction of the road, as proposed by it, does not disconnect the town of Newton.

All the county seats in the State, including the town of Newton, were connected by a road system. The statute itself, speaking through a map,

made the connection in a definite and certain manner. What the statute hath joined together the defendant cannot put asunder.

We conclude that the Road Act itself connected the county seats according to the best judgment of the Legislature. A substantial departure from such connection so made by the sovereign power of the State must, of necessity, constitute a disconnection.

We hold, therefore, that the spirit of the Road Act contemplated that all county seats in North Carolina should be served by the highway system substantially as designated on the map, and that the road, as proposed by the defendant, is not a substantial compliance with the true intent and meaning of the road law.

The trial judge properly held that "the court cannot direct the location of the road." And while slight deviations might be permissible in the interest of the regulation of traffic or other controlling problems of engineering, yet the plaintiff is entitled, under the law, to the service of the road system, which would logically result from a substantial compliance with the location as fixed by the Legislature. ·

Judgment affirmed.

STACY, C. J., dissenting: The State Highway Commission is an agency of the State, charged with the duty of exercising certain administrative and governmental functions, chiefly·those enumerated in C. S., 3846(j). *Latham v. Highway Commission,* 191 N. C., 141; *Road Commission v. Highway Commission,* 185 N. C., 56; *Carpenter v. R. R.,* 184 N. C., 400. And it is a statement of public policy so firmly embedded in our law as to amount almost to an axiom to say that when a State agency, clothed with administrative and governmental authority, acts within the law, and deals officially with a matter duly submitted for its decision, the courts are not permitted to interfere with its judgment or to control its discretion, except in case of oppression or manifest abuse, when there is no appeal from its judgment as allowed by statute. *Cameron v. Highway Commission,* 188 N. C., 84; *Peters v. Highway Commission,* 184 N. C., 30; *Cobb v. R. R.,* 172 N. C., 61; *Edwards v. Comrs.,* 170 N. C., 448; *Supervisors v. Comrs.,* 169 N. C., 548; *Newton v. School Committee,* 158 N. C., 186; *Howell v. Howell,* 151 N. C., 575; *Board of Education v. Comrs.,* 150 N. C., 124; *Rosenthal v. Goldsboro,* 149 N. C., 128; *Glenn v. Comrs.,* 139 N. C., 412.

"Who made us judges over such matters?" *Supervisors v. Comrs.,* 169 N. C., 548.

Speaking to the identical question in *Peters v. Highway Com.,* 184 N. C., 30, the late *Chief Justice Clark* said: "The courts are not empowered to supervise the action of administrative boards because of a

difference of opinion as to the action taken or contemplated by the officials charged with the duties of administration." And in the same case the following was quoted with approval from the opinion of *Hoke, J.,* in *Newton v. School Committee,* 158 N. C., 186: "In numerous and·repeated decisions the principle has been announced and sustained that courts may not interfere with discretionary powers conferred on these local administrative boards for the public welfare unless their action is so clearly unreasonable as to amount to an oppressive and manifest abuse of discretion (citing authorities). In some of the opinions, decided intimation is given that in so far as the courts are concerned the action of these administrative boards must stand unless so arbitrary and unreasonable as to indicate malicious or wanton disregard of the rights of persons affected. It is undesirable and utterly impracticable for the courts to act on any other principle."

The leading case in our Reports is probably that of *Brodnax v. Groom,* 64 N. C., 244, decided in 1870. What was said in that case is especially applicable here, for there, as in the instant suit, it was sought to enjoin commissioners, charged with the duty of deciding the question, from exercising their judgment in regard to providing means for building bridges "where none had been before—not connected with any public road," hence, alleged to be "unnecessary and otherwise extravagantly expensive." *Pearson, C. J.,* writing the opinion of the Court, said: "So the case before us is within the *power* of the county commissioners. How can this Court undertake to control its *exercise?* Can we say such a bridge does not need repairs; or that in building a new bridge near the site of an old bridge it should be erected as heretofore, *upon posts,* so as to be cheap, but warranted to last for some years; or that it is better policy to locate it a mile or so above, where the banks are good abutments, and to have *stone pillars,* at a heavier outlay at the start, but such as will insure permanence, and be cheaper in the long run? In short, this Court is not capable of controlling *the exercise* of power on the part of the General Assembly, or of the county authorities, and it cannot assume to do so, without putting itself in antagonism as well to the General Assembly as to the county authorities, and *erecting a despotism of five men;* which is opposed to the fundamental principles of our government and the usages of all times past. For the exercise of powers conferred by the Constitution the people must rely upon the honesty of the members of the General Assembly and of the persons elected to fill places of trust in the several counties. This Court has no power, and is not capable if it had the power, of controlling the exercise of power conferred by the Constitution upon the legislative department of the government or upon the county authorities."

This case has been followed and cited with approval in *Wilson v. Charlotte,* 74 N. C., 759; *London v. Wilmington,* 78 N. C., 109; *Ashcraft v. Lee,* 79 N. C., 35; *Evans v. Comrs.,* 89 N. C., 158; *Tate v. Greensboro,* 114 N. C., 392; *Vaughan v. Comrs.,* 117 N. C., 434; *Herring v. Dixon,* 122 N. C., 422; *Stratford v. Greensboro,* 124 N. C., 132; *Black v. Comrs.,* 129 N. C., 125; *Wadsworth v. Concord,* 133 N. C., 594; *Small v. Edenton,* 146 N. C., 527; *Peters v. Highway Commission, supra,* and many others too numerous to be mentioned, probably two hundred in all.    See Shepard's Citations and Allen's Reported and Cited Cases, 1926.

Plaintiffs do not allege that the State Highway Commission has abused its discretion in relocating the road from Statesville to Newton, but they seek to restrain its action in the present proceeding solely upon the ground that, in relocating said road, two county seats have been disconnected in violation of chapter 2, Public Laws 1921, which provides that the proposed roads, shown upon the map attached to said act, may be "changed, altered, added to or discontinued by the State Highway Commission: *Provided,* no roads shall be changed, altered or discontinued so as to disconnect county seats, principal towns, State or national parks or forest reserves, principal State institutions and highway systems of other states."

It is conceded that the northern route as proposed by the State Highway Commission comes in physical contact with the paved-street system of Statesville, the county seat of Iredell County, and with the paved-street system of Newton, the county seat of Catawba County, and reduces, not only the cost of road construction and maintenance, but also the distance between the two places by 1.39 miles over the southern route, for which the plaintiffs contend.   How, then, can it be said, *as a matter of law,* that the two county seats will be disconnected by the proposed change, when in fact they will still be connected by the highway? How is it practical to connect two county seats or principal towns with a highway, except by making physical contact with the street systems of the two places?   It is the declared purpose of the Legislature that the various county seats and other principal towns shall be connected "by the most practical routes," such practical routes to be determined and established by the State Highway Commission.

But it is said that the road as proposed by the State Highway Commission is not a substantial compliance with the statute which requires the various county seats and other principal towns to be *connected* by the most practical routes, and that the change, as contemplated, will have the effect of *disconnecting* the two county seats in violation of the proviso above quoted.   If it be conceded that the primary purpose in

building the road from Statesville to Newton is to connect these two county seats, then the only practical difference between the two routes, so far as concerns a traveler going from the courthouse in Statesville to the courthouse in Newton, is that on the northern route he would approach the town of Newton from the north and drive down main street to the courthouse, whereas on the southern route he would approach the town of Newton from the south and drive up main street to the courthouse, and returning, he would retrace his steps on either route.

If local connections, therefore, are to be given primary consideration in construing the statute, what local objections can be made to the road as proposed by the State Highway Commission? The objections, it seems to me, are not based on any failure to make local connections, but rather on the ground of through travel; and it should be remembered that the statute provides for a State system of dependable roads as well as for local connections.

However, going from courthouse to courthouse is admittedly not the test of connecting two county seats in building the State system of highways. And it is correctly said in the majority opinion that the commission may make changes so as to avoid traffic congestion in the various county seats, principal towns, etc., from which it would seem to follow, as a necessary corollary, that the exact location of the different roads, going to make up the State system, is a matter which rests, and was intended by the Legislature to be lodged, in the sound discretion of the State Highway Commission, limited only by the terms of the proviso above set out. This is the meaning of the statute as I understand it.

Lincolnton, the county seat of Lincoln County, is southwest of Newton, while Hickory, one of the principal towns of Catawba County, is northwest of Newton, and Statesville is northeast of Newton. All of these places must be connected with the State highway system. The Statesville-Newton-Lincolnton road, as proposed by the State Highway Commission, passes directly through the town of Newton. But if the plaintiffs' view is to prevail, this road will touch only the southern part of the town of Newton, as the proposed Statesville-Newton-Hickory road touches only the northern part of the town of Newton. At present the main line of travel is over the Statesville-Newton-Hickory road, but, if in time this should shift to the Statesville-Newton-Lincolnton road, what would then be the attitude of Newton towards the southern route? The plaintiffs are now interested in having the principal line of travel pass over the main street of Newton and in front of the courthouse, but a few years from now, in all probability, Newton, like many other places in North Carolina, will be confronted with the problem of traffic congestion. Then what? Shall not the commission look to the future?

Likewise, the Lincolnton-Newton-Hickory road runs through the heart of Newton. Hence, in no sense can it be said, as a matter of law, that Newton is not connected with the Statesville-Newton-Hickory road, or the Lincolnton-Newton-Hickory road; the two roads meet within the corporate limits of the town of Newton. Nor can it be held, in my opinion, as a legal conclusion, that Newton and Statesville will be *disconnected* by the proposed change.

The commission was fully warranted in believing, and the Attorney-General in so advising, that the location of the road as proposed was a sufficient compliance with the law as declared by this Court in the recent cases of *Cameron v. Highway Commission,* 188 N. C., 84, and *Road Commission v. Highway Commission,* 185 N. C., 56. In both of these cases, substantial departures from the roads designated on the map attached to the act of 1921, were sanctioned and approved, because such "proposed roads" were only tentative, and the State Highway Commission was expressly authorized to "change, alter, add to, or discontinue" any of the proposed roads shown upon the legislative map, subject only to the limitation contained in the proviso above set out.

But it is now said, "the spirit of the Road Act contemplated that all county seats in North Carolina should be served by the highway system substantially as designated on the map." If the Court means by this to overrule, or to modify, what was said in *Cameron v. Highway Commission, supra,* and *Road Commission v. Highway, Commission, supra,* I think it should specifically call attention to the fact, so that the State Highway Commission and its legal advisers may know how to proceed in the future. If all the roads going to make up the State highway system have been located in advance by legislative fiat, "substantially as designated on the map," and such is the Court's interpretation of the statute, the authorities, or those charged with the building of the roads, ought to know it so that the highway engineers may understand the limitations within which they must work.

If all the county seats in the State are to be served by the highway system substantially as designated on the map, then the authority of the State Highway Commission to "change, alter, add to, or discontinue" any of the proposed roads shown upon said map, must be understood as limited by a double, rather than a single, proviso, as follows: *Provided,* no roads shall be changed, altered or discontinued so as to disconnect county seats, principal towns, etc. *Provided further,* that all county seats shall be served by the highway system substantially as designated on the map.

I cannot think the Legislature intended to locate all the roads going to make up a great State system, or even those connecting the county seats, by the simple device of drawing lines upon a map. This would

be a species of legislative engineering utterly at variance with every consideration of wisdom and economy in the construction and building of highways. The different roads were designated on the map wholly without regard to the topography of the country. Straight lines were drawn across rivers, swamps and mountains as they appear on the map, with no regard for exact location, and surely the Legislature did not intend for the roads to follow these lines, not even substantially so, if other routes connecting the various county seats, principal towns, etc., were more practical. Section 7 of the act contains express provision to the contrary.

In the instant case, the northern route is shorter and more economical than the southern route. They both connect Statesville with Newton, and *vice versa.* Tested by the standard of substantial compliance with the map, I am unable to see wherein the Legislature has forbidden the selection of the route as proposed by the State Highway Commission.

It is conceded that, from the standpoint of through travel, the position of the plaintiffs in favor of the southern route is not without its strength of appeal, if Newton is entitled to have such travel routed over its principal street. But the reasons advanced by the plaintiffs were not deemed convincing or compelling in the forum charged with the duty of deciding the matter. Nor was it thought that all consideration for through travel should be sacrificed to local advantage, if such it be.

These arguments are mentioned only to show that the question presented is one to be determined, primarily and in the first instance at least, by the State Highway Commission in the exercise of a sound, but not arbitrary, judgment. Indeed, the determination of such matters is a part of the duties and responsibilities imposed upon it by the statute under which it was created. *Cameron v. Highway Commission,* 188 N. C., 84.

Let it be observed that this is not an appeal from a decision of the State Highway Commission, as authorized by C. S., 3846(p), nor are we passing in review on the wisdom or impolicy of the action of the Commission in relocating the road in question. Either route might have been selected, without objection, so far as the law is concerned. Our duty, in a proceeding like the present, begins only where the authority of the Commission ends. The question before us is not whether we agree with its decision, but is it lawful? We are passing upon the legality of its act, and nothing else.

I think the plaintiffs have failed to make out a case calling for judicial interference or injunctive relief, and, for the reasons given, I must dissent from the decision of the majority.

ADAMS, J., concurs in dissenting opinion.