STACY, C.J., and ADAMS, J., concurring in part and dissenting in part.
This was a civil action instituted in the Superior Court of Catawba County, in which the plaintiffs procured a temporary restraining order and injunction restraining and enjoining the defendant from constructing a proposed highway between Statesville and Newton. The plaintiffs also asked for a writ of mandamus to compel the defendant to construct a road, which the plaintiffs contend the defendant has heretofore adopted and selected as the road connecting Statesville and Newton. The cause came on for hearing upon the complaint and the map attached thereto, marked Exhibit "A," and the answer and the map attached thereto, and *Page 161 
the affidavit of one G.L. Stine, to the effect that the map referred to in the pleadings, as posted at the courthouse door of Newton, was the map of the roads in Catawba County so posted at the courthouse door by the defendant, and that no objection or protest against the roads indicated thereon have been made by the county commissioners of Catawba County or by the street-governing body of any city or town in said county within sixty days after the posting of said map.
This was all the evidence offered in the case.
The second, third, sixth and seventh findings of fact, together with a portion of the fifth finding, are as follows: (The fifth finding of fact embodies the findings of fact made by Judge Webb in a former case, which will be found in Newton v. Highway Commission, 192 N.C. 54.)
2. "That the section of highway between Statesville, N.C. the county-seat of Iredell County, in said State, and Newton, N.C. the county-seat of Catawba County, in said State, after the passage of said act of 1921, was temporarily adopted and taken over as a part of the State Highway System as a portion of Route No. 10, and that thereafter said highway was duly indicated on a map, copy of which is hereto attached, marked Exhibit `B,' which was posted at the courthouse door in the town of Newton, indicating the adoption of said highway through Catawba County as then constituting a part of the State Highway System, and a link in Route No. 10; that since said temporary adoption of said section of said road by defendant, defendant has maintained the same as a part of said highway system, as a link in Route No. 10, and that said road has been the main thoroughfare between Statesville and Newton for more than twenty years; that the highway, when located and constructed between Statesville and Newton, will be a part of the 5,500 miles of State Highway System provided for in the said act of 1921, as indicated by the said map attached to and constituting a part of said act of 1921."
3. "That defendant has made a careful investigation and study of the relative use, cost, value, importance and necessity of several suggested routes proposed to constitute a link in the State Highway known as `Route No. 10,' between Statesville and Newton, N.C.; that defendant has adopted and ordered to be constructed a highway between Statesville and Newton, as shown on a map or blue-print hereto attached, marked Exhibit `A,' which route is indicated by an orange line, marked `Line No. 3,' and which connects with the towns of Catawba and Claremont on said route, and enters the town of Newton, so as to connect with Route No. 16, the road from Lincolnton to Newton, about one block south of the county courthouse in the said town of Newton; that the route so selected by defendant is an abandonment of the road between Statesville and Newton, which has been in use for practically twenty years, and that said new route so selected and adopted by defendant *Page 162 
abandons the old route, heretofore temporarily adopted, at or about the corporate limits of Statesville, and does not anywhere come in contact with said old route again until it reaches the courthouse square of Newton; that at the time of the commencement of this action, defendant had entered an order by the terms of which it had declared its purpose to abandon the route heretofore adopted as aforesaid, between Statesville and Newton, and was advertising for bids for the construction of said new route; that said new route, instead of passing through the southeastern portion of Catawba County, as Route No. 10, now proceeds, goes north of Route No. 10, as it now proceeds, and practically through the center of the town of Catawba, from where it is proposed to enter the county at the Catawba River and on into Newton, and is removed, in same places, a distance from one to eight miles from Route No. 10, as it now proceeds."
(Portion of 5.) "The location of the southern route on said map abandons the route known as `Route No. 10,' at a point about half way between the town of Newton and the Catawba River, and proceeds from that point along a comparatively straight line, to the town of Newton, which said southern route is indicated on the map hereto attached as Exhibit `A,' by a red line, marked `Line No. 1,' the route temporarily adopted by defendant as a sector of Route No. 10, being indicated by the dotted lines on said blue-print or map, marked `N.C. No. 10.'
6. "That the route which the defendant proposes to construct, as indicated by the orange lines on the map, Exhibit `A,' will parallel with another road already passing through the northern part of Catawba County; that the route proposed by defendant will connect with two public roads; that the route now used as a link in Route No. 10, from Newton to Statesville on the southern route, as indicated by the red line on the map, connects with eleven public roads, which represent a thickly settled section of the county, where travel is very heavy; that the proposed route, over which defendant proposes to construct said highway in Catawba County, as indicated by the orange line on the map, Exhibit `A,' passes through the two flourishing towns of Catawba and Claremont, each having a population of about four hundred, and through a thickly populated rural territory between said towns; that the southern, or present route, does not run near or connect with any town between Newton and the Catawba River in Catawba County; that the eleven roads referred to above as connecting with the present link of Route No. 10, or as the southern route, lead directly or indirectly into Catawba, Claremont and Newton, and will there connect with Route No. 10, if the road is constructed as now proposed by the defendant, as indicated by the orange line on the map, Exhibit `A.' *Page 163 
7. "That the distance from Statesville to Newton over the southern route proposed by plaintiffs is 5.09 miles greater than over the proposed route of defendant, marked in orange on the blue-print or map, Exhibit `A,' and designated as `Line No. 3'; that it will cost $250,000 less to construct defendant's proposed route than it will cost to construct the said present route; that defendant was advised by the Attorney-General's Department that the defendant's said route is in substantial conformity to the route shown on the State Highway map attached to said Highway Act, and defendant in good faith and in the honest exercise of the discretion conferred upon it by said act, and the construction of the same by the Supreme Court of North Carolina, adopted the said proposed route as a part of Route No. 10, from Statesville, N.C. the county-seat of Iredell County, to Newton, N.C. the county-seat of Catawba County."
Before the pleadings were read or evidence offered, the towns of Catawba and Claremont moved the court to be permitted to become parties to the action. The court allowed the motion. Thereupon the plaintiffs moved for a continuance upon the ground that as Catawba and Claremont had been made parties and filed answers, issues were raised which the plaintiffs were unable to meet at the hearing. Thereupon, after hearing argument upon the question, the court came to the conclusion that the towns of Catawba and Claremont had not made a sufficient show of interest to entitle them to be made parties defendant and file answers, and ordered the answers of said towns to be stricken out. Whereupon, Catawba and Claremont appealed.
In order to understand clearly the point involved in the present controversy, it is perhaps worth while to examine the setting of this case. The plaintiffs in this action instituted a suit against the defendant Highway Commission about April, 1926, alleging that the present road between Statesville and Newton was a part of the 5,500 miles of the State Highway System provided for in the act of 1921, and that this road was shown on the legislative map attached to the act and further, that the road had been mapped by the defendant and taken over as a part of Route No. 10. The defendant, in its answer, admitted that the existing road between Statesville and Newton, as described in the complaint, had been taken over and designated as part of Route No. 10. *Page 164 
In that case the defendant proposed a total abandonment of the existing road which it had designated as a portion of the State Highway System, and to construct an entirely new road along the yellow line from Statesville to Newton, extending north of the right of way of the Southern Railway Company, touching neither Catawba nor Claremont, and entering Newton just within its northern corporate limits, as shown by the Exhibit `A,' filed in the cause. A hearing upon the matter was held before Judge James L. Webb, who found certain facts and rendered judgment restraining the defendant from constructing said road along said yellow line within Catawba County. The findings of fact and judgment in that case appear in 192 N.C. p. 54. The defendant appealed to the Supreme Court, and the court held that the road proposed by the defendant, represented by the yellow line, was not in compliance with the law for the reasons given in the opinion. After the former decision, the defendant, on or about December, 1926, proposed another road and advertised for bids to construct the same. This proposed road is the subject of the present controversy. The road proposed by the defendant leaves Statesville along the yellow route referred to in the former case. Some distance west of Statesville it turns southwestward of the town of Catawba, and thence bears northwestward south of the right of way of the Southern Railway Company to the town of Claremont, and thence bears again southwestward, entering the town of Newton about a block from the courthouse, and is designated on the map as "Line No. 3." Roughly speaking, the line contended for by the plaintiffs follows in a general way the present road, which was mapped by the defendant and posted at the courthouse door of Catawba County, until it reaches a point some distance west of Catawba, where it leaves the present existing road and continuous in practically a straight line to Newton, thus eliminating a loop in the present road. The defendant contends that it has power under the law to entirely abandon the present road and construct a new road along the orange line, or Line No. 3, which may be designated as the northern route.
The plaintiffs contend that the defendant has no power, under the Road Act, to totally abandon the road which was mapped at the courthouse door and taken over as a part or a link of the State Highway System, for the reason that the law empowered the defendant to change or relocate existing roads, and that the road proposed by the defendant is not a change or relocation of the existing road, but a total abandonment thereof, and the construction of a totally new and independent road.
The merit of these contentions is the question presented in this case.
The facts are comparatively simple: On 16 March, 1921, J. C. Carpenter, an engineer, surveyed a road, running from Statesville to *Page 165 
Newton. This was an existing highway, and had been used for more than twenty years. Thereupon the defendant caused a map to be made of said road and posted at the courthouse door in Catawba County. The law required notice to be given. After posting said map, the law required that the county commissioners and street-governing bodies of each city or town "shall be notified of the routes that are to be selected and made a part of the State System of Highways." No protest was filed by the County commissioners of Catawba County or by the street-governing body of any town in said county within the period of sixty days prescribed by the Road Act. The law says: "In that case the said roads or streets, to which no objections are made,shall be and constitute links or parts of the StateHighway System." If objections had been made, the defendant, after giving notice, had the power to hear the whole matter. In such event, the law says: "And the decision of the State Highway Commission shall be final." Thereupon, the defendant assumed control of this road and has since maintained it. It gave it a name and called it Route No. 10. So that the defendant, in the exercise of its sound discretion, proposed, designated, surveyed, mapped, selected, and established this existing highway as the sole and independent connecting link between Statesville and Newton.
In Carlyle v. Highway Commission, 193 N.C. p. 49, this Court said: "We are therefore of the opinion that the statute means that when an existing highway has been designated, mapped, selected, established and accepted by the State Highway Commission as the sole and independent connection between two county-seats in compliance with the formalities prescribed by the statute, that this is a location of the road as a permanent link of the State System of Highways."
The defendant, however, earnestly contends that this is not a correct interpretation of the Road Act for the reason that the mapping, designation and adoption of the links or sections of highway which it took over and assumed the maintenance of, were only intended as temporary acts, and that such links, under the law, are only temporary links in the State System of Highways.
The trial judge found "that the section of highway between Statesville, N.C. . . . and Newton, after the passage of said act of 1921, was temporarily adopted and taken over as a part of the State Highway System as a portion of Route No. 10, and that thereafter, said highway was duly indicated on a map . . . which was posted at the courthouse door in the town of Newton, indicating the adoption of said highway through Catawba County as constituting a part of the State Highway System, and a link in Route No. 10." The record discloses that all the evidence before the court was the complaint, the answer, the exhibits, and an affidavit. Upon the admitted facts, therefore, the question as to *Page 166 
whether or not the road was adopted temporarily is a question of law, because it is agreed that the defendant designated, surveyed, mapped and posted this highway as required by the statute. Whether the conduct of the defendant amounted to a temporary adoption of the highway in controversy or the permanent adoption thereof depends upon the construction of the law. Did the law contemplate that compliances with the formalities prescribed by the statute were only temporary acts and a mere species of shadow boxing? The Road Act, in defining the purposes thereof, contains this language: "And for the further purpose of permitting the State to assume control of the State Highways, repair, construct, and reconstruct and maintain said highways at the expense of the entire State, and to relieve the countiesand cities and towns of the State of this burden." Again, in section 50 the act provides: "The board of county commissioners or other road-governing bodies of the various counties in the State are hereby relieved of all responsibility or liability for the upkeep or maintenance of any of the roads or bridges thereon constituting the State Highway System, after thesame shall have been taken over and the control thereof assumed by theState Highway Commission, etc." This provision of the law, we apprehend, was enacted for the reason that all automobile license taxes and gasoline taxes which the counties would use for road purposes had been turned over to the defendant. It was therefore just and proper that, after the defendant received these vast revenues from the counties and cities and towns, it ought to bear the burden of maintaining such existing roads in the counties as were incorporated into the State System of Highways, and to "repair, construct and reconstruct" them. How can the county of Catawba be relieved of liability for the maintenance of this existing highway if the defendant is permitted to totally abandon it and cast the maintenance thereof back upon the county? The defendant admits in its answer that it has spent large sums of money for the maintenance of this highway since its adoption as a part of the State System.
Again, section 8 of the Road Act required the defendant, within 60 days, to commence "to assume control of the various links of road constitutingthe State Highway System, . . . and complete the assumption of control . . . as rapidly as practicable." If the contention of the defendant is correct, then the language "various links of road constituting the State Highway System" is meaningless, because there would be no links constituting the State Highway System until such time as the defendant should establish such links.
Again, in section 9, the act provides: "After the selection of a part orparts of the State Highway System, the Commission may cause roads comprising such system . . . to be distinctly marked, etc." If the contention of the defendant is correct, then this clause of the law would *Page 167 
be meaningless, because no selection of a part or parts of the State Highway System has ever been made.
Again, in section 9, subsection (c), the act provides: "After takingover section or sections of the State Highway System, the Commission may erect proper and uniform signs, etc." If the contention of the defendant is correct, then this clause of the law would be meaningless for the reason that no section or sections of State Highway System existed or would exist until such time as the defendant in its discretion should create and establish such sections.
Reduced to a minimum, the contention of the defendant is that the act contemplated two highway systems, one a temporary system, which it took over and assumed control of, and the other a permanent system, which it would thereafter, in the exercise of its discretion, ordain, lay out, establish, and construct. We are of the opinion that the plain provisions of the statute indicate that when an existing highway was mapped by the defendant and selected and incorporated as a part of the State System in accordance with the formalities prescribed, that these highways, so selected and incorporated, became permanent links of the State System.
Now, conceding that when it has mapped an existing highway and assumed control of it that it becomes a permanent link in the State System, the defendant contends that it has the power under the road law to change, discontinue, abandon, and relocate such road in such way and manner and to such extent as it may choose. We assume that it will be readily granted that the source of the defendant's power and discretion is the act itself. What does the Act say in regard to these matters? In section 7 it is approved: "A map showing the proposed roads to constitute the State Highway System is hereto attached to this bill and made a part hereof. The roads,so shown, can be changed, altered, added to, or discontinued by the StateHighway Commission: Provided, no road shall be changed, altered or discontinued so as to disconnect county-seats, etc." Hence, the "roads, so shown, can be changed, discontinued, etc." Shown where? Obviously upon the legislative map. In the Carlyle case, supra, referring to the legislative map, the Court said: "Of course, changes, alterations and discontinuances of proposed roads shown on the legislative map were authorized under certain limitations, but when that map was actually fitted to the ground by the defendant through the map made by it an posted at the courthouse door, and by the exercise of its discretion in accepting, selecting, and incorporating such road into the State System the explicit legislative declaration was: `And the decision of the State Highway Commission shall be final.'" In the former Newton case the defendant admitted that the existing highway was shown on the legislative map. In this case it *Page 168 
denies that the existing highway is shown on the legislative map, and asserts that the road shown thereon passes through Catawba and Claremont. Assuming that the admission in the former case was erroneously and inadvertently made, and that the present contention is correct, then it follows that the legislative map has in nowise restricted or interfered with the full and free play of defendant's discretion, for the plain reason that it discarded the legislative map entirely and surveyed, mapped and selected the existing highway as the connecting link of the State System between Statesville and Newton. In the former Newton case the Court said: "We hold, therefore, that the spirit of the Road Act contemplated all county-seats in North Carolina should be served by the Highway System substantially as designated on the map, etc." The defendant in its brief says: "Now, to what map does the Court refer?" In view of the contention made in this case the words "substantially as designated on the map" are perhaps confusing. But in the former case the plaintiff alleged that the existing road was shown on the legislative map, and was a part of the 5,500 miles of State Highway System as provided for in the act of 1921. The defendant, answering this allegation, admitted that it took over the "existing county road between Statesville and Newton, as described in the complaint." Now, in the complaint the road "was described" as being shown on the legislative map. It was further alleged and admitted and still admitted in this case that the defendant had mapped this same road as required by the law. It was therefore apparent that in the former case both the legislative map and the map made by the defendant were absolutely identical. Hence, the Court used the words "designated on the map" in a general sense. It never occurred to the writer, by reason of the solemn admission in the answer, that there was, in the particular case, any dispute or controversy as to their absolute identity until the point was made for the first time in the petition to rehear the case.
The law permitted the defendant, in the exercise of its discretion, to propose, designate, survey, map and select such existing highway or highways in each county as it intended to establish as links in the system. The map made by it and posted at the courthouse door was the objective notice to all the world of that purpose and intention to incorporate such road into the Highway System. If no objections were made in sixty days, the statute declared in express terms that the discretion of the defendant in the selection or location of links in the State System once exercised, became final.
Again, if it be conceded that the changes, alterations and discontinuances mentioned in section 7 refer only to the legislative map, then the defendant contends that power to totally abandon the existing road in controversy is contained in section 10, subsection (b). The language of *Page 169 
the pertinent clause is "to change or relocate any existing road that the State Highway Commission may now own or may acquire." In the first place, it may be contended with clear support of reason that desirable changes and relocations of an existing highway were made when the defendant surveyed and mapped the highway in 1921, and that one of the main purposes for requiring it to make and post a map of the "routes that are to be selected and made a part of the State System of Highways" was to show any changes or relocations, if the link finally accepted and adopted by it was, as in this case, an existing highway. In the second place, "change or relocation" of an existing highway does not mean that the existing highway may be totally abandoned from end to end, and a new, independent and wholly unrelated project constructed in its stead, because this would result in the substitution of an entirely independent and fundamentally different improvement. For instance, if Fayetteville Street in Raleigh was an existing highway under the control of the defendant, and it was authorized "to change or relocate" Fayetteville Street, would that mean that in exercising the power the defendant could refuse to touch Fayetteville Street at all, or even come near to it, but, upon the other hand, build a new road in Cary or Garner or Morrisville? In our opinion, both reason and the law is to the contrary.
The defendant, in paragraph 3 of the answer, says: "In this connection, it is averred that the route adopted by this defendant is located substantially along the line of the old Lewis Ferry Road, which was the principal road from Statesville to Newton for many years prior to the adoption of the new road, or the lower route, etc." If the defendant, in the exercise of its discretion, had mapped this Lewis Ferry Road and selected it and incorporated it as a link in the system connecting Statesville and Newton, then certainly it could build the proposed road along that line, and the town of Newton would have no standing in court so far as the proposed location of the road is concerned.
Another contention made by the defendant is that if it be not allowed to make new selections and locations for permanent construction, that the result will be that this Court is locating or selecting roads. The selection or location of roads constituting links in the Highway System is the sole and exclusive function of the defendant. This Court has no such power or authority, and has never undertaken to exercise such authority. It has, however, undertaken and now undertakes to say whether or not the defendant has the right, under the law as written, to entirely abandon a highway which, in the free exercise of its discretion, it has surveyed, mapped, accepted and adopted, in conformity with the provisions of the statute. It would be as reasonable to contend that the Court is engaging in contracting or attempting to build a house *Page 170 
because, in cases involving the performance of a building contract, upon admitted facts, it should determine whether or not a contractor had substantially performed his agreement.
In concluding this phase of the case, the Road Act imposed upon the defendant three important duties:
1. To select or locate the various roads in each county which should constitute the permanent connecting links in the State Highway System of "approximately 5,500 miles of hard-surfaced and other dependable highways."
2. To maintain and control the existing highways so selected and adopted "in the most approved manner as outlined in this act," and further "to relieve the counties and cities and towns of the State of this burden."
3. To do such work upon the various links in the system "as will lead to ultimate hard-surfaced construction as rapidly as money, labor, and materials will permit."
In the exercise of its discretion, the defendant has selected the existing road between Statesville and Newton as a permanent link in the State System, and has also maintained this link, so far as this record discloses, in the manner contemplated by law.
When the defendant enters upon the permanent construction of the road a different engineering problem arises. The law clearly realizes that engineering skill requires latitude of discretion and it grants and confers ample latitude. It permits the defendant, in constructing an existing highway or such other routes as it may have selected according to the statute, to make changes and relocations, to eliminate curves, to shorten the alignment of the road, to alter grades and to utilize to the best advantage the topography of the ground where the road is located. In short, in the performance of the duty of the construction of a particular road the law permits free and untrammeled discretion, except it forbids that the particular road should be totally abandoned and a new project substituted therefor, as the judge finds, from one to eight miles distant from the highway which the defendant has established as a link in the system.
We hold, therefore, upon the record as presented:
1. That the defendant, in the free exercise of its discretion, selected the existing road between Statesville and Newton as a permanent link of the State Highway System.
2. That in the construction of said road the statute authorizes the defendant to make such changes and relocations of said existing highway as it may deem necessary for the efficient and economic construction thereof. *Page 171 
3. That the road proposed by the defendant, indicated on the map as the orange line, or Line No. 3, is a radical departure from the highway already selected and incorporated by the defendant as a permanent link in the State System, and that such proposed road is not a change or relocation of the highway selected, but is a totally new and independent project, and does not comply with the meaning and intent of the law as written.
The second phase of the case involves Catawba and Claremont. Both of these towns filed petitions in the cause to be made parties. After the reading of the pleadings, the trial judge concluded that these towns were not proper parties to the suit, and ordered that the answers filed by them be stricken from the record. From this order both towns appealed. While there is no finding of fact in the record to that effect, assuming, however, that these two towns are principal towns in Catawba County within the meaning of the law, what are the rights of these towns with respect to the selection and construction of the road in controversy? In 1921, when the defendant selected the permanent link of the State Highway System in Catawba County and mapped the same and posted the map at the courthouse door in Catawba County, the law required the defendant to notify "the street-governing body of each city or town in the State . . . of the routes that are to be selected and made a part of the State System of Highways." There is no finding of fact in the record about this matter, but the law presumes that when the defendant was charged with a public duty that it has properly performed that duty. No protest was made by Catawba or Claremont, and no objection filed to the selection of the road within the time allowed by statute. The map made by the defendant and posted at the courthouse door showed that the defendant was proposing an existing highway as a permanent link in the system, and that neither Catawba nor Claremont was shown on said highway. Again, when the defendant proposed the road which was the subject of the former Newton case, the road so proposed touched neither Catawba nor Claremont. There was still no protest or objection by either of these municipalities. The first protest or intimation of interest in this controversy was manifested when said towns filed petitions in this cause on 1 December, 1926. Unquestionably, these flourishing municipalities were originally as much the beneficiaries of the road law as Newton, but the law did not compel them to assert their rights if they were satisfied with the action of the defendant in selecting the present road as the connecting link of the Highway System in Catawba County. We therefore affirm the ruling of the trial judge in denying the petitions of Catawba and Claremont.
However, the defendant has the power, under the law, if, in its discretion the exercise thereof shall seem wise and proper under section 10, *Page 172 
subsection (b), "to locate and acquire rights of way for any new roads that may be necessary for a State Highway System, with full power to widen, relocate, change or alter the grade or location thereof." The Legislature, in its wisdom, by this section of the law, empowered the defendant to select and construct new roads which it deemed necessary for the State System in such way and manner and in such places as it might determine.
The ruling of the trial judge in denying the writ of mandamus is affirmed upon the facts contained in the present record. The ruling of the trial judge in dissolving the injunction issued by Judge McElroy on 22 November, 1926, is reversed, and the defendant, its agents and servants, are restrained and enjoined from abandoning the existing road in Catawba County as a permanent link in the State System of Highways, to the end that work done thereon "shall be of such a character as will lead to ultimate hard-surfaced construction as rapidly as money, labor and materials will permit."
Reversed.